Harry **KURACH** and Claire Schlusselberg, Plaintiffs,

v.

Harold A. **WEISSMAN** et al., Defendants.

Dorothy **GOLDBERG**, Plaintiff,

v.

The **DREYFUS CORPORATION** et al., Defendants.

Morey **SILVERMAN**, Plaintiff,

v.

William P. **ROGERS** et al., Defendants.

Marvin H. **SCHEIN**, Plaintiff,

v.

Harold A. **WEISSMAN** et al., Defendants.

Civ. Nos. 93, 2924, 2982, 3471.

United States District Court, S. D. New York.

March 13, 1970.

Milton Paulson, New York City, General Counsel, for plaintiffs.

Royall, Koegel & Wells, New York City, for defendants; Stuart A. Jackson,

Michael F. Cole, New York City, of counsel.

Dilworth, Paxson, Kalish, Kohn & Levy, Philadelphia, Pa., for Joseph B. Kauffman; Bruce W. Kauffman, David Pittinsky, Philadelphia, Pa., of counsel.

Philip A. Loomis, Jr., Gen. Counsel, Meyer Eisenberg, Associate Gen. Counsel, David M. Butowsky, Chief Enforcement Attorney, Securities and Exchange Commission, Washington, D. C.

## OPINION

McLEAN, District Judge.

This is an application for approval of a proposed settlement of four derivative actions, consolidated by order dated June 12, 1969, brought by stockholders of Dreyfus Fund Incorporated against The Dreyfus Corporation, which is the manager and investment adviser of the Fund, and against Dreyfus & Co., the Fund's principal broker, and the directors of the Fund. The settlement is opposed on different grounds by a stockholder of the Fund, Joseph B. Kauffman, and by the Securities and Exchange Commission. Kauffman claims that the settlement is inadequate. The Commission asserts that it is illusory.

Plaintiffs charge violations of the Investment Company Act of 1940. Their principal complaint is of management fees, which are .5 per cent of the net assets of the Fund, without any scaling down of the fee as the net assets increase. The net assets are very substantial and hence the total fee is correspondingly high. Plaintiffs also complain, in the jargon customary in these actions, of "churning," use of "give ups" and "reciprocals," failure to use the "third market," etc.

The proposed settlement agreement, as amended after the hearing to make it somewhat more favorable to the Fund, provides in substance that the net profits derived by the Fund's principal underwriter, Dreyfus Sales Corporation, a subsidiary of The Dreyfus Corporation, from acting as a broker for the Fund, will be offset against the management fees payable by the Fund to its manager, The Dreyfus Corporation. Dreyfus Sales Corporation is a member of the Philadelphia-Baltimore-Washington Stock Exchange. It proposes to carry on its brokerage activities there. It may in the future become a member of other exchanges as well. There is no time limit on this arrangement, which will continue indefinitely unless the stockholders of the Fund should in the future vote to discontinue it.

To guard against that possibility, as well as the possibility that the Fund may give little or no brokerage business to Dreyfus Sales Corporation, The Dreyfus Corporation guarantees that there will be credited against the management fees at least $1,000,000 over a five-year period an average of $200,000 per year for five years. In addition, Dreyfus Sales Corporation agrees in effect to apply in reduction of the management fees the proceeds of any "give ups" which Dreyfus Sales Corporation may receive in connection with its brokerage activities for the Fund.

It is estimated that application of the minimum guaranteed credit of $200,000 per year would result in reducing the advisory fee from .5 per cent to .492 per cent of the net assets. Obviously, if the net profits of Dreyfus Sales Corporation from this business are higher than the guaranteed minimum, then the reduction in advisory fees will be correspondingly greater. The benefit to be derived by the Fund from this proposed settlement can hardly be said to be spectacular. Nevertheless, the court must decide whether the settlement is fair and reasonable, taking into account the probabilities of success if the action goes to trial. Lessac v. Television-Electronics Fund, Inc. [1967–1969 Transfer Binder] CCH Fed.Sec.L.Rep. ¶ 92305 (S.D.N.Y.1968); Glicken v. Bradford, 35 F.R.D. 144 (S.D.N.Y.1964).

The likelihood of success does not appear to be strong. As far as the

court has been advised, there has never been a recovery in one of these excessive management fee cases. There have, however, been at least three cases in which recovery has been denied. Meiselman v. Eberstadt, 39 Del.Ch. 563, 170 A.2d 720 (Ct.Ch.1961); Saxe v. Brady, 40 Del.Ch. 474, 184 A.2d 602 (Ct.Ch. 1962); Acampora v. Birkland, 220 F. Supp. 527 (D.Colo.1963).

The other points raised by plaintiffs present at best unsettled issues of law.

In addition to the difficulty of convincing a court that the fees are so excessive as to be beyond the reasonable business judgment of the directors of the Fund, and that the other claims are valid, there are also special factors here which militate against recovery of any substantial sum. These include the full disclosure which the Fund has made to its stockholders with regard to many of the acts complained of, plus the fact that a similar action in the state court was settled in 1967, thereby perhaps affording the defendants a defense except as to matters arising subsequent to that date.

The stockholders of the Fund have given at least an indirect approval of this proposed settlement by approving, at a meeting held on April 29, 1969, the changes in the management contract which are necessary to carry the settlement into effect. The vote on that amendment was 116,446,095 shares in favor, to 3,962,410 shares opposed, a ratio of approximately 29 to 1.

Even those stockholders who voted against the amendment to the management contract have not troubled to appear to oppose this settlement. According to the proxy statement of the Fund for the April 29, 1969 meeting, there were 162,110,127 shares of stock of the Fund outstanding as of December 31, 1968. Kauffman is the only stockholder who opposes the settlement. According to his complaint in the action referred to below, he owns 826 shares.

Kauffman is the plaintiff in a mammoth action in the United States District Court for the District of New Jersey entitled Kauffman v. The Dreyfus Fund, Inc., et al., Civil Action No. 1348–68. He has named as defendants in that action over sixty funds, together with their investment advisers and some of their directors. His complaint charges them with combination and conspiracy in violation of the Sherman Act. One of the terms of the conspiracy is alleged to be the adopting of similar schedules of grossly excessive management fees. In a second count, Kauffman complains of the practice of accepting "give ups" and "reciprocals." In a third count he complains of misleading proxy statements.*

Kauffman fears that approval of the present settlement may have an adverse effect upon his New Jersey action as far as his charges with respect to the Dreyfus Fund are concerned. It would seem that, considering the magnitude of the action and the great number of defendants involved, the effect would be minimal, at worst. In any event, the effect of any settlement of this case upon Kauffman's action is a matter to be decided by the District Court of the District of New Jersey in which that action is pending. This court cannot concern itself with that question. If this settlement is fair and reasonable under all the circumstances, it should be approved, whatever the effect may be upon the other pending suit.

Kauffman urges that the failure of these plaintiffs to take depositions of defendants is a fatal obstacle to approval

---

* Defendants' motions to dismiss this action on the ground, among others, that plaintiff has no standing to sue on behalf of Funds of which he is not a stockholder were denied by the United States District Court for the District of New Jersey by order dated September 30, 1969. The court certified its order for interlocutory appeal under 28 U.S.C. § 1292 (b). Kauffman v. Dreyfus Fund, Inc., Civil Action No. 1348–68 (D.N.J. December 18, 1969).

of the settlement. The court does not agree. It appears that plaintiffs' accountants have made an extensive study of defendants' records. This is essentially a documentary case. The court is persuaded that plaintiffs have prepared their case adequately and that they are in a position, as a result of their investigation, to appraise their chances of ultimate success. There is no magic to oral depositions as such. In this case there seems to be little, if anything, that they would add to the written evidence of the essential facts.

■ The court has concluded that under all the circumstances this settlement, modest as it may appear to be, is a reasonable disposition of this action. The court is unable to predict with any certainty that the Fund would fare better if the action were pursued throughout a trial. It is quite possible that it would fare worse.

It remains to consider the objections of the Commission. The Commission expresses no opinion on the merits of the action. But it argues that the proposed settlement is illusory because it "offers no benefits to Fund shareholders, which they are not in any event entitled to receive * * *." This comes close to saying that a broker affiliated with the investment adviser of a Fund is legally obligated to turn over his commissions to the Fund. Yet the Commission disclaims any intention to put forward this proposition as a legal rule of universal application. And it appears to recognize that such a proposition would be inconsistent with Section 17(e) of the Investment Company Act of 1940 which, at least by clear implication, authorizes an affiliated person of a registered investment company to accept compensation for buying or selling property for the investment company in the course of the affiliated person's business as a broker.

The Commission contends that in this particular case, regardless of any general rule, Dreyfus Sales Corporation should turn over to the Fund its profits on bro-kerage transactions for the Fund. The Commission's principal reason is that, only a year or so ago, Dreyfus Sales Corporation made a similar arrangement with a new Dreyfus fund, Dreyfus Leverage Fund, Inc., which was not involved in litigation. Since Leverage Fund obtained this benefit without compromising a lawsuit in order to secure it, the Commission feels that, in fairness, the Dreyfus Fund should also have an opportunity to obtain it without surrendering any claims.

■ The court does not consider this to be a valid ground for rejecting the proposed settlement. Whatever Dreyfus Sales Corporation may have seen fit to do in the case of the new Leverage Fund is beside the present point. The court would not be justified in holding, in the face of Section 17(e) and in the absence of any other relevant authority, that Dreyfus Sales Corporation is obligated to turn over its brokerage profits to the Fund. Since the Sales Corporation is free not to do so, it does not seem to the court to be unfair to say that if it does do so, the Fund may be asked to pay a price for that benefit. Whether the benefit to the Fund is enough to justify the price is quite another matter. That goes to the adequacy of the settlement, a subject discussed earlier in this opinion.

The Commission's brief in opposition to this settlement was submitted before the proposed settlement agreement was amended. The amendments obviate some of the Commission's objections, as presumably the parties intended them to do. The Commission's remaining comments go to matters of detail which require no discussion here.

The court directed that notice of this application be given to the Commission, which was not a party to this action, so that the court might have the benefit of any views that the Commission might wish to express. The court is grateful for the Commission's comments and has carefully considered them. Having done

so, however, the court concludes that despite the Commission's arguments, it is in the best interest of the parties to compromise and terminate this litigation upon the terms proposed. The application is therefore granted.

Settle order on notice.