Vera G. WHITE, Consolidated Plaintiffs,

v.

Joseph AUERBACH et al., Defendants.

and

Manhattan Fund Inc., Defendant-Appellee,

Mortimer G. Levine et al., Objectors-Appellants.

Nos. 804, 805, Docket 73-2739, 73-2768.

United States Court of Appeals, Second Circuit.

Argued April 22, 1974.

Decided July 24, 1974.

Alfred S. Julien, New York City (Julien Blitz & Schlesinger, P. C. and Leon Axelrod, New York City, on the brief), for objectors-appellants.

Samuel P. Sporn, New York City (Schoengold & Sporn, New York City, on the brief), for objector-appellant Barbara Kornreich.

Paul M. O'Connor, Jr., New York City (Whitman & Ransom, New York City, on the brief), for defendant-appellee Manhattan Fund Inc.

Before LUMBARD and HAYS, Circuit Judges, and JAMESON,* District Judge.

JAMESON, District Judge:

Objectors-appellants appeal from an order denying their applications for attorneys' and accountants' fees and disbursements, submitted in connection with the settlement of consolidated stockholders' derivative actions brought

---

* Senior District Judge of the District of Montana, sitting by designation.

on behalf of defendant-appellee, Manhattan Fund Incorporated (the Fund), a diversified open-end investment company registered under the Investment Company Act of 1940.[1]

The defendants in the consolidated action were Tsai Management & Research Corporation (TMR), the investment adviser and principal distributor of the Fund, the directors of the Fund, the original stockholders of TMR, and CNA Financial Corporation (CNA) and its wholly-owned subsidiary, also named Tsai Management & Research Corporation (new TMR).[2] The original stockholders of TMR sold their stock to CNA in 1968 in exchange for CNA stock, whereupon TMR was merged into CNA, and CNA's wholly-owned subsidiary, new TMR, took over the business of TMR. The principal charges alleged in the complaint were that (1) TMR had mismanaged the Fund;[3] (2) TMR wrongfully acquired the right to use the name "Manhattan Fund"; and (3) the sale of TMR to CNA in effect involved the sale of the investment advisory contract with the Fund,[4] which plaintiffs contended was a corporate opportunity for which the Fund, rather than defendants, should receive compensation.

*Proceedings Leading to Approval of Amended Settlement Agreement*

On November 30, 1970 the parties entered into a "Stipulation and Agreement of Settlement and Compromise" whereby TMR agreed to relinquish to the Fund all "right, title and interest" in the use of the words "Manhattan" and "Manhattan Fund", and new TMR agreed to reduce the Fund's management fees for a ten year period commencing January 1, 1971. The settlement agreement was submitted to Judge McLean, who entered an order setting a hearing for March 19, 1971. His order provided that notice be given to all stockholders of the Fund, and that stockholders who object to the settlement "may appear at the hearing and show cause why the settlement and compromise * * * should not be approved as fair, reasonable and adequate * * *".

Appellants Kornreich, Julien and Levine filed written objections and memoranda and appeared at the hearing to protest approval of the settlement. In substance they argued that the settlement was inadequate on the grounds that (1) it gave no recognition to the charge that defendants had wrongfully profited from the sale of the Fund's

---

1. The order was entered by Judge Robert J. Ward on August 13, 1973. Proceedings seeking approval of proposed settlement agreements were handled by the late Judge Edward C. McLean, who issued an opinion approving an amended settlement on September 18, 1972. Judge McLean died a few days later, and the case was transferred to Judge Ward, who entered a judgment on December 18, 1972, pursuant to Judge McLean's opinion, approving the amended settlement and retaining jurisdiction for the purpose of passing on any applications of plaintiffs and objectors for counsel and accounting fees and expenses. By reason of the fact that the question of allowance of fees and expenses was determined by a judge other than the trial judge, it is necessary to review the factual background in some detail.

2. Four actions were commenced on behalf of the Fund in 1967 and consolidated by order entered on February 16, 1968.

3. The plaintiffs claimed, *inter alia*, that TMR exacted excessive management and distribution fees, that Gerald Tsai, Jr., TMR's majority stockholder, violated his fiduciary obligation as a promoter of the Fund, that defendants caused the Fund's portfolio to be "churned" by unnecessary purchases and sales of securities, and that defendants deprived the Fund of the benefit of so-called "give ups", "reciprocals" and the "third market."

4. The merger agreement required that TMR use its best efforts to convince the stockholders of the Fund to approve termination of the management contract with TMR, and to approve, on the same terms, a new management contract with new TMR. At a meeting on August 16, 1968, the stockholders approved the management and distribution contracts with new TMR.

management contract with TMR; and (2) the proposed reduction in management fees was illusory.

Counsel for plaintiffs stated that the charge with respect to the sale of the Fund's management contract was not specifically addressed in the settlement because there were indications that the Securities and Exchange Commission had changed its previous position that the management contract was an asset of the Fund, and because there were "a number of decisions * * * indicating that when stockholders of an advisory management fund sell their stock it is their own profit and no part of it belongs to the "Fund".. In considering the "problems of success or failure" on this issue, it was decided that it would be in the best interests of the Fund and its stockholders to agree to the settlement, which in substance provided only for a ten year reduction in management fees.[5]

In contending that the proposed reduction in management fees was illusory, appellants first argued that the reduction in fees would be offset by refunds which the investment adviser would be required to make to the Fund if management expenses exceeded the amounts allowable under the blue sky laws of several states, most notably California. Appellants pointed out that blue sky refunds for 1970 totalled $410,643, whereas the estimated proposed reduction in management fees for 1971 was only $92,000.[6]

The parties to the settlement agreement did not deny that blue sky refunds would constitute an offset to the proposed management fee reduction, but contended that (1) if the refunds became burdensome, the Fund "may have to withdraw entirely" from the states that exact expense limitations; and (2) in any event, it was highly unlikely that the "unusual, unprecedented and extraordinary market conditions" which made the expense limitations operative in 1970 would recur during the ten year period of the fee reduction.

In order to insure that the parties were sincere in their statements that there will no longer be any liability on the part of the Advisor to repay the Fund because of the operation of the Blue Sky Laws", counsel for appellants Julien and Levine, by letter dated March 30, 1971 addressed to Judge McLean, recommended that "the stipulation of settlement be amended to provide that the reduction of the management fee * * * shall be in addition to any repayments required under the provisions of the blue sky laws". The suggested amendment was not incorporated in the settlement agreement.

Pointing out that under paragraph 10 of the settlement agreement the guaranteed reduction was contingent on the existence of a management contract with a subsidiary of CNA or its parent corporation, appellants contended that the possibilities of a termination of the contract [7] or sale of TMR or assignment of the contract to a non-subsidiary of CNA or its parent made the ten year guarantee "illusory and a hoax", and that the proposed guarantee could only be satisfied by an unconditional promise to reduce management fees by a specified dollar amount. The parties admitted, under questioning by the court, that there was no guarantee of a specified dollar reduction, but argued that there was "a real reduction" in terms of percentages "as long as the contract continues".

At the hearing counsel for appellant Kornreich cited Judge McLean's approval of the settlement proposal in the *Dreyfus* case, reported as Kurach v.

5. In addition, counsel for the Fund stated on behalf of his client that, "There has never been any merit in this lawsuit as far as we are concerned."

6. The settlement agreement set forth in a sliding-scale formula which tied the reduction in management fees to the "average of the daily net asset value of the Fund" for the year in question.

7. Paragraph 7 of the proposed management contract provided that the contract could be terminated by either the Fund or TMR on 90 days' notice.

Weissman, 49 F.R.D. 304 (S.D.N.Y. 1970). In *Dreyfus* the original settlement provided that the management fee reduction was contingent upon the continued legality of a brokerage arrangement between the Dreyfus Fund and a subsidiary of the managing corporation. The Securities and Exchange Commission objected to the settlement, contending, *inter alia*, that the contingent nature of the fee reduction rendered it illusory. Counsel for the parties decided to amend the settlement to provide that the minimum fee reduction would be "absolute and unconditional, regardless of any future change in the law". The court approved the settlement as amended.

Counsel for appellant Kornreich argued that under *Dreyfus* the management fee reduction proposed by the parties was defective because of its contingent nature' and the fact that there was no minimum guarantee of a set dollar amount. Judge McLean stated that he had not "considered the Dreyfus case at all since this thing came up", and at the close of the hearing he commented that in making his decision he would "get more familiar with * * * the Dreyfus case than I am at the moment".

Prior to Judge McLean's decision on the settlement, this court on June 22, 1971 decided Rosenfeld v. Black, 445 F. 2d 1337 (2 Cir. 1971), cert. dismissed, 409 U.S. 802, 93 S.Ct. 24, 34 L.Ed.2d 62 (1972). In *Rosenfeld* the plaintiffs, stockholders of a mutual fund known as The Lazard Fund, Inc., alleged that the Fund's investment adviser had wrongfully received compensation for effecting a transfer of its investment advisory office. The district court had granted summary judgment in favor of defendants, 319 F.Supp. 891 (S.D.N.Y.1970). We reversed, holding that there was "no reason why the 'well-established

principle of equity' forbidding realization of profit for effecting the turn-over of corporate or other fiduciary office should not apply to the investment adviser of a mutual fund", 445 F.2d at 1343, and that this "principle of equity" had not been superseded by the Investment Company Act of 1940, as amended. *Id.* at 1344–1348.[8] It is conceded that *Rosenfeld* added substantial force to plaintiffs' claim, previously unrecognized in the settlement, that defendants had wrongfully profited by effecting a transfer and sale of the Fund's management contract with TMR.

It appears from a transcript of a hearing before Judge McLean on December 17, 1971 [9] that following the decision in *Rosenfeld* counsel for plaintiffs and defendants met with him on June 29, 1971 and requested that he withhold his decision on the settlement because, in light of *Rosenfeld*, they wanted to consider an amended settlement agreement more favorable to the Fund.[10] Judge McLean informed counsel that he had decided to disapprove the original settlement agreement, but agreed to "withhold decision until the amended settlement proposal came in".

The parties agreed to submit an amended settlement in early September, but they failed to comply with this self-imposed deadline. Judge McLean expressed dissatisfaction with the delay. He announced that if the amended settlement agreement were not submitted by December 31, 1971, he would "proceed to deny the application [to approve the settlement] which has been pending before me since March, I will pass immediately upon the motions which I have been holding up and also upon Mr. Julien's present motion [to intervene], and I will not entertain any further proposals in this case."

8. See also Newman v. Stein, 464 F.2d 689 (2 Cir. 1972).

9. The hearing was upon a motion of appellants Julien and Levine to intervene as plaintiffs. A similar motion to intervene was

made by appellant Kornreich. The court denied both motions.

10. Counsel for appellants were not present at the June 29 meeting, although they had informed Judge McLean of the decision in *Rosenfeld* by letter dated June 25, 1971.

On December 28, 1971 the parties submitted an amended stipulation of settlement, more favorable to the Fund than the original proposal, in that it provided for a guarantee to the Fund of a fee reduction of $250,000 should the contract be terminated during the ten year period, and that nine former shareholders of TMR would deliver to the Fund stock of CNA worth $1,000,000 in settlement of the claim based on the *Rosenfeld* doctrine.

On January 12, 1972 Judge McLean entered an order setting March 17 as the date for the hearing to determine whether the amended settlement was "fair, proper, reasonable and adequate" and providing for notice to the Fund shareholders. During January and February depositions of principal witnesses were taken to aid in determining the adequacy of the settlement, and, pursuant to Judge McLean's instructions, counsel for appellants were allowed to participate in the taking of the depositions and conducted a substantial portion of the examination.

At the hearing appellants Kornreich, Julien and Levine, joined by appellants Shainwald, objected to the amended settlement proposal, contending that the problem of the blue sky refunds had not been cured and that the $1,000,000 in CNA stock was inadequate in settlement of the *Rosenfeld* type claim. The parties, on the other hand, defended the adequacy of the settlement, and with respect to the blue sky refunds argued that although refunds of $410,643 and $53,373 were made in 1970 and 1971, respectively, it was an "extremely remote" possibility that such refunds would occur "in the next ten years".[11]

On September 18, 1972 Judge McLean issued an opinion approving the amended settlement. Noting appellants' contention that the $1,000,000 settlement of the *Rosenfeld* claim was inadequate, Judge McLean concluded, after a thor-ough analysis, that the recovery was "reasonable and adequate". With respect to the blue sky refunds, Judge McLean could "see nothing in the proposed settlement agreement to the effect that any payment required by state blue sky laws is to be offset against the reduction in the management fee". Rather, "Under the settlement agreement, TMR will be obligated to reduce the management fee in the specified amount." He concluded that "If [TMR] is also obligated by reason of state blue sky laws to pay money to the Fund, the latter payment will be in addition to, and not in substitution for, [the management fee reduction]."

As noted *supra,* following Judge McLean's death, the case was transferred to Judge Ward, who entered a judgment on December 18, 1972 pursuant to Judge McLean's opinion, which, *inter alia,* approved the amended settlement and dismissed the consolidated action with prejudice. The court retained jurisdiction for the purpose of passing upon "any applications which may be made by plaintiffs or objectors or their counsel and accountants for an allowance of fees and disbursements incurred by them in the prosecution and settlement of the * * * consolidated action".

Counsel for plaintiffs submitted an application for attorneys' and accountants' fees and disbursements in the amount of $400,000.[12] Their request was accompanied by affidavits and exhibits setting forth in detail the services of the counsel and accountants and the benefits accruing to the Fund as the result of the amended settlement, which plaintiffs estimated at $2,000,000.

Appellants filed similar applications, contending that their efforts had resulted in the incorporation of improvements in the amended settlement. Specifically, they claimed "sole credit" for the unconditional guarantee of a $250,000 reduction in management fees and the portion

---

11. In fact, blue sky refunds for 1972 totalled $91,636, whereas the management fee reduction pursuant to the amended settlement amounted to only $80,426.

12. In connection with the original settlement proposal plaintiffs had requested $225,000 in attorneys' and accountants' fees.

of Judge McLean's opinion which held that blue sky refunds were to be in addition to, and not a credit against, the reduction in management fees. In addition, appellants claimed "substantial credit" for the $1,000,000 settlement of the *Rosenfeld* claim, arguing that if it had not been for their objections Judge McLean might have approved the original settlement and agreement prior to the decision in *Rosenfeld*. Appellant Kornreich requested fees of $75,000 and costs of $240, and the other appellants requested $125,000 in fees and costs of $397.05.[13]

### Decision of the District Court

Following a hearing at which oral arguments were presented but no evidence submitted, Judge Ward granted the application of plaintiffs' counsel in the amount of $300,000 and denied the application of appellants.[14]

After reviewing the benefits to the Fund resulting from the settlement,[15] the court concluded that $2,000,000 was "a reasonable estimate of the benefit to the Fund afforded by this settlement". With respect to plaintiffs' application, the court stated that the "conclusion is inescapable" that a substantial portion of the $2,000,000 benefit was "largely due to the decision in *Rosenfeld*", that prior to this decision plaintiffs' counsel gave "unqualified support" to the origi-

nal settlement, which did not provide for the $1,000,000 payment of CNA shares to the Fund, and that counsel for plaintiffs "did not request that a decision on the settlement be withheld until after a decision in *Rosenfeld* came down, nor did they indicate to Judge McLean that an appeal was pending before the Second Circuit in that case". On the other hand, the court noted that "Plaintiffs' counsel have spent considerable time on this matter",[16] and concluded that $300,000 was "a fair and reasonable attorneys' fee inclusive of disbursements".

With respect to appellants' application, the court noted that it was confronted with the "difficult task" of determining "the extent, if any, the objectors contributed to the settlement approved by Judge McLean". Stating that, "This, in some measure, is dependent upon the influence the objectors' arguments had on Judge McLean", the court observed that the extent of this inflow "is simply not clear", but considered it "noteworthy" that "nowhere in the record did Judge McLean indicate that any objector benefitted this settlement".[17]

The court rejected appellants' claim that they were responsible for the guaranteed management fee reduction of $250,000, on the ground that "the guarantee was primarily a contribution of Judge McLean, and, to a lesser extent,

13. Appellant Kornreich estimated that her attorneys spent 324 hours on the case. The estimate for the other appellants was 500 hours.

14. The approved settlement provided that 25% of the fees and disbursements awarded plaintiffs would be paid by certain defendants. In its brief the Fund states that it has paid plaintiffs' counsel $225,000, representing its 75% share of the $300,000 fee awarded, that if the district court had awarded fees to appellants "the entire amount thereof would have constituted a charge on the settlement fund to be wholly paid by the Fund", and that accordingly "the Fund is the only party to this proceeding which has an economic interest in this appeal."

15. The benefits included the payment of stock of CNA valued at $1,000,000, the

"guaranteed reduction of the management fee of no less than $250,000, which reduction could, based upon an agreed formula, reach $1,000,000 within ten years", defendants' waiver of all claims for indemnification from the Fund for expenses and legal fees, the transfer to the Fund of all rights in the names "Manhattan Fund" and "Manhattan", and payment by TMR and Gerald Tsai, Jr. of 25% of the fees and disbursements awarded to attorneys and accountants for consolidated plaintiffs.

16. Plaintiffs' counsel estimated that they spent "in excess of 4,881 hours in the investigation and prosecution of this action".

17. We agree with appellants that there was never really any occasion for Judge McLean to make such an observation, since normally "such an evaluation and mention would come by fee application hearing or decision".

the improved bargaining position of plaintiffs after the decision in Rosenfeld v. Black". The court noted that at oral argument counsel for certain defendants had "indicated that Judge McLean insisted that the final settlement include a guaranteed fee reduction, and that he was aware of this problem from prior similar litigation" in the *Dreyfus* case.

With respect to the blue sky refunds, the court stated that "Judge McLean clearly indicated that the objectors made no contribution which benefitted the settlement", since in his opinion approving the settlement he observed that he could "see nothing in the proposed settlement agreement to the effect that any payment required by state blue sky laws is to be offset against the reduction in the management fee * * *."

Finally, the court rejected appellants' contention that their objections caused Judge McLean to delay his decision until after the opinion in *Rosenfeld* had been issued. The court noted that appellants had failed to ask Judge McLean to delay his decision pending the outcome of *Rosenfeld* on appeal, and held that appellants "are not entitled to the inference * * * that Judge McLean's decision was 'delayed' because of their efforts" and that there is "no indication that Judge McLean would have given less attention to this settlement in the absence of these objections".

Concluding that the objectors had "shown no substantial benefit to the Fund", the court denied their applications.

*Denial of Fees and Disbursements for Objectors-Appellants*

■ Rule 23.1 of the Federal Rules of Civil Procedure provides that shareholders' derivative actions "shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to shareholders or members in such manner as the court directs". One of the purposes of the dual requirement of court approval and notice to shareholders is to "prevent the unrighteous compromise of just shareholder's actions". 3B Moore's Federal Practice, para. 23.1.24[1]. Accordingly, it is well settled that objectors have a valuable and important role to perform in preventing collusive or otherwise unfavorable settlements, and that, as the district court recognized, they are entitled to an allowance as compensation for attorneys' fees and expenses where a proper showing has been made that the settlement was improved as a result of their efforts.[18]

■ Ordinarily the trial judge has broad discretion in deciding whether, and in what amount, attorneys' fees should be awarded, since he is in the best position to determine whether the participation of objectors assisted the court and enhanced the recovery. See *Pergament, supra,* 224 F.2d at 83. Here, however, we have an unusual situation in that the district judge who passed on the applications for attorneys' fees did not preside over the proceedings which formed the basis for the applications.

■ Counsel have not cited, nor have we found, any cases dealing with the fact situation here presented. It is clear that the final settlement embodied alterations urged by appellants in their objections to the first proposal. The district court concluded that the extent of the influence the objectors' arguments had on Judge McLean in enhancing the settlement "is simply not clear." We agree that it is manifestly impossible to determine definitely to what extent, if any, Judge McLean may have been influenced by objectors' contentions. We do conclude, however, that appellants have made a *prima facie* showing which requires an evidentiary

18. See, e. g., Pergament v. Frazer, 132 F. Supp. 323 (E.D.Mich.1954), aff'd as modified, 224 F.2d 80 (6 Cir. 1955); Winkelman v. General Motors Corporation, 48 F.Supp. 504, 512 (S.D.N.Y.1942); and Milstein v. Werner, 58 F.R.D. 544, 552 (S.D.N.Y.1973).

hearing.[19] See Lindy Bros. Bldrs., Inc. of Phila. v. American R. & S. San. Corp., 487 F.2d 161, 169–170 (3 Cir. 1973).

The appellants made a *prima facie* showing that the provision in the approved agreement for a guaranteed minimum reduction in the management fee resulted from their contention that the fee reduction provision in the initial settlement agreement was illusory in the absence of a guaranteed minimum. While the district court concluded that "the guarantee was primarily a contribution of Judge McLean", who was aware of the problem from his prior handling of the *Dreyfus* case, this is by no means clear from the record. When counsel for appellant Kornreich brought *Dreyfus* to the court's attention, Judge McLean stated that he had not "considered the Dreyfus case at all since this thing came up".

In this regard the case is similar to Green v. Transitron Electronic Corporation, 326 F.2d 492, 498–499 (1 Cir. 1964), wherein the district court had denied an allowance to an objector's counsel on the ground that the court was aware of the problem prior to the time when the objection was made. The Court of Appeals noted that at the time of the objection "none of the court's misgivings were a matter of record", and held that it was "unfair to counsel when, seeking to protect his client's interest and guided by facts apparent on the record, he spends time and effort to prepare and advance an argument which is openly adopted by the court, but then receives no credit therefor because the court was thinking along that line all the while." 326 F.2d at 499.

Appellants also made a *prima facie* showing with respect to the blue sky refunds. Although the settlement agreement does not contain a provision relating to such refunds, Judge McLean's opinion approving the agreement makes it clear that any blue sky refunds are to be in addition to and not a credit against the reduction in management fees. Had it not been for appellants' objection, Judge McLean would have had no occasion to consider this issue. The parties at no time contended that blue sky refunds would not be credited against the reduction in management fees. Moreover, they failed to respond to appellants' suggestion that the agreement "be amended to provide that the reduction of the management fee * * * shall be in addition to any repayments required under the provisions of the blue sky laws".

Appellants' contribution to the enhanced settlement by reason of *Rosenfeld* is more questionable. They did urge the point decided in *Rosenfeld* at the hearing on the original settlement proposal, but apparently were not aware of that case, and in any event did not request Judge McLean to withhold his ruling pending this court's decision in *Rosenfeld*. On the other hand, counsel for plaintiff not only did not request that a decision be withheld pending a decision in *Rosenfeld*, but actually urged approval of a settlement which did not include the *Rosenfeld* type claim. Yet, they were awarded a substantial fee, based in part on the enhanced value of the amended settlement—$75,000 in excess of the amount requested when they were urging approval of the initial agreement.[20]

Appellants do not claim full credit for the enhancement in the recovery by reason of the *Rosenfeld* type claim, but argue that absent their objection Judge McLean might have approved the initial agreement before *Rosenfeld* was decided.

19. As noted *supra*, the district court's decision was based upon affidavits, exhibits, briefs and oral argument. No one, including appellants, demanded an evidentiary hearing, although appellants contend on appeal that "an evidentiary hearing should have been ordered".

20. It is recognized that further negotiations were conducted by the parties subsequent to the *Rosenfeld* decision and also that counsel for plaintiffs were required to spend additional time as a result of appellants' objections to the amended settlement prior to its approval by Judge McLean.

The district court held that appellants were "not entitled to the inference * * * that Judge McLean's decision was 'delayed' by their efforts". This conclusion might well be justified, but appellants should be given an opportunity to submit any proof they may have to support their contention that the delay was due, at least in part, to their objections. At an evidentiary hearing, the other parties will of course have an opportunity to rebut appellants' proof on this issue as well as appellants' other claims.

Reversed and remanded for an evidentiary hearing.