In re: THE PRUDENTIAL INSUR-
ANCE COMPANY OF AMERICA
SALES PRACTICES LITIGATION

This Document Relates to: All Actions
No. CIV.A. 95–4704.

United States District Court,
D. New Jersey.

July 22, 2003.

## MEMORANDUM OPINION

WOLIN, District Judge.

This matter is before the Court on a joint application by counsel for plaintiffs Krell and Johnson for an award of fees and expenses in the class action lawsuit against the Prudential Insurance Company of America ("Prudential"). Krell is represented by Malakoff, Doyle & Finberg, P.C., Murray and Murray Co., L.P.A., Wilson, Frame, Benninger & Metheney, P.L.L.C., Berger & Lagnese, LLC, and Leesfield, Leighton, Rubio, Mahfood, & Boyers, P.A. Johnson is represented by the Law Offices of Richard H. Rosenthal, P.C. and the Selden Law Firm.

All interested parties have had the opportunity to submit written arguments with respect to this fee petition. Additionally, all of the parties have provided the supplemental information requested by this Court in its order dated June 12, 2002. The Court will decide the matter on the papers pursuant to Federal Rule of Civil Procedure 78. For the reasons stated herein, the application for fees and expenses will be granted in part and denied in part.

## PROCEDURAL AND FACTUAL BACKGROUND

The Court will not review the lengthy history of this litigation. Instead, the Court refers its readers to the facts and procedural history of this case as set forth in its prior opinions and the opinion of the Third Circuit. *See In re Prudential Ins.* *Co. of Am. Sales Practices Litig.*, 962 F.Supp. 450 (D.N.J.1997) (approving class action settlement); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F.Supp. 572 (D.N.J.1997), *aff'd in part, vacated in part,* 148 F.3d 283 (3d Cir.1998) (awarding attorneys' fees to lead class counsel); *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 106 F.Supp.2d 721 (D.N.J.2000) (awarding attorneys' fees to lead class counsel). Further discussion of the proceedings in this matter, specifically, the conduct of Michael P. Malakoff ("Malakoff"), one of the attorneys representing Krell, can be found in two opinions addressing a motion for sanctions brought against Malakoff. *See In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 63 F.Supp.2d 516 (D.N.J.1999) (Walls, J.), *aff'd in part, rev'd in part, In re Prudential Ins. Co. of Am. Sales Practice Litig. Agent Actions,* 278 F.3d 175 (3d Cir.2002).

In the instant motion, counsel for Krell and Johnson jointly request attorneys' fees, costs and expenses totaling $2.25 million.[1] On March 8, 1999, the lead counsel for the plaintiffs entered into a stipulation with counsel for Krell and Johnson (collectively referred to as the "Objectors"), agreeing that the Objectors would not oppose lead counsel's application for a $90 million fee award, and in return, lead counsel would not oppose the Objectors' application for a fee award of up to $2.25 million plus interest earned thereon from the earlier of the Finality Date, as defined in the stipulation or July 1, 1999.[2]

---

1. The Verified Petition filed in support of the motion appears on its face to request only $2.25 million; however, the Proposed Order annexed as Exhibit N thereto purports to include "accrued interest from July 1, 1999, under Class Counsel's March 8, 1999 Stipulation." The proposed Order also seeks payment "within five (5) days of this Court's Order," even though the March 8, 1999 Stipulation provides for payment "within 10 days after Objectors either notify Co–Lead Counsel

in writing that they do not intend to appeal such award, or if such appeal is taken, within 10 days after such appeal is final and no longer subject to appeal." This lack of candor towards the Court and parties has dogged Mr. Malakoff, and has been of concern to this Court throughout these proceedings.

2. The Court affirmatively refused to approve this stipulation.

The parties agreed, or in some cases the Objectors asserted and lead counsel did not dispute, that there were several ways the Objectors added value to the settlement. First, the parties agreed that the Objectors' objections to the notice materials and claim form were a material factor in the decision to amend such forms. The parties agreed that because of the amended forms, "at least 2–1/2% additional ADR claims (at least 12,500) were remediated at a score of "2" or higher that otherwise would not have been remedied. Co–Lead Counsel reasonably believes that the value of remediation of 12,500 ADR claims would exceed $50 million."

Second, the Objectors asserted and lead counsel did not dispute that by appealing this Court's settlement and fee award to the Third Circuit, the Objectors delayed the payment of approximately $41 million in fees and expenses for about two years, resulting in about $4.8 million in time value to Prudential.

Third, the Objectors asserted and lead counsel did not dispute that because the appeal to the Third Circuit delayed Co–Lead Counsel's final fee and expense application, the application was not made until the number of remediated ADR claims was better known, which provided an unspecified value to the Class. The Objectors claim that, by their conservative estimate, they contributed approximately $56 million in value to the settlement.

## DISCUSSION

The Objectors' verified petition for attorneys' fees contains a plethora of justifications for the requested fee award. Interestingly, the Objectors fail to cite one case in support of the proposition that as objectors, they are entitled to attorneys' fees. The Court reminds the Objectors that they played a different role in this litigation from that of Class Counsel. The Court, therefore, will not treat their peti-

tion for fees as if they were class counsel, and the Objectors will not be awarded fees for all of their work conducted in the course of this matter. Instead, the Court will follow precedent and award fees which reflect the value the Objectors conferred upon the class.

■ While "[a]n objector to a class action settlement is not generally entitled to an award of counsel fees," *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 358 (N.D.Ga.1993), objectors are entitled to compensation for attorneys' fees and expenses if the settlement was improved as a result of their efforts. *See In re Westinghouse Sec. Litig.*, 219 F.Supp.2d 657, 660 (W.D.Pa.2002) (quoting *White v. Auerbach*, 500 F.2d 822, 828 (2d Cir.1974)). If objectors are successful in challenging an award of attorneys' fees to lead class counsel, their objections have conferred a benefit on the class. *See id.* (citations omitted); *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051–52 (9th Cir.), *cert. denied*, 537 U.S. 1018, 123 S.Ct. 536, 154 L.Ed.2d 425 (2002); *In re BankAm. Corp. Sec. Litig.*, 228 F.Supp.2d 1061, 1069–70 (E.D.Mo.2002); *In re Horizon/CMS Healthcare Corp. Sec. Litig.*, 3 F.Supp.2d 1208, 1215 (D.N.M.1998).

■ As an initial matter, the Court will address the fee applications made by attorneys John T. Murray (from the firm of Murray & Murray Co., L.P.A.), and J. Michael Benninger (from the law firm of Wilson, Frame, Benninger, & Metheney, P.L.L.C.). While the Court does not doubt that these attorneys played an instrumental role in voicing the objections of their clients, the record before this Court demonstrates that they did not substantially participate in the objections made to the settlement or to the Court's award of fees to Class Counsel.

For example, the records submitted by John Murray indicate that the firm did not

contribute in any way to the settlement or fee award objections. J. Michael Benninger certified that his work was conducted in the preliminary stages of the case, and that his "legal services were performed before this case was ultimately removed from state court in West Virginia and transferred to this Court." The Court finds that these attorneys have not meaningfully contributed to the settlement or award of attorneys' fees, and accordingly, the Court will deny their request for attorneys' fees and expenses.[3]

The Court now turns to the fee petition submitted by the remaining movants herein. When addressing a request for fees in a class action, a district court is typically required to thoroughly analyze the application, even where the parties have agreed to the award, because of the " 'danger . . . that the lawyers might urge a class settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment for fees.' " *In re Gen. Motors Corp. Pick–Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 820 n. 39 (3d Cir.1995) (citation omitted). This danger arises because generally, " 'a defendant is interested only in disposing of the total claim asserted against it; . . . the allocation between the class payment and attorneys' fees is of little or no interest to the defense.' " *Id.* at 819–20 (quoting *Prandini v. Nat'l Tea Co.*, 557 F.2d 1015, 1020 (3d Cir.1977)). Thus, the amount of attorneys' fees and expenses to be awarded is within the court's sound discretion. *See id.* at 820.

Here, however, the Court is not faced with those typical concerns. The agreement under consideration was not made between Class Counsel and the defendant, but instead, between the Class Counsel and the Objectors. The fees to be paid to

the Objectors have already been designated as part of the fees paid to Class Counsel, and the money has been set aside in escrow. The fee award does not involve the defendant, and it does not in any way compromise the value of the class settlement. Nevertheless, the Court has undertaken a thorough analysis of the fee application before it.

■ There are two methods used by courts for determining whether an attorney's request for fees is reasonable—the lodestar approach and the percentage-of-recovery approach. *See In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 732 (3d Cir.), *cert. denied*, 534 U.S. 889, 122 S.Ct. 202, 151 L.Ed.2d 143 (2001). The lodestar method is commonly used in statutory fee-shifting cases, while the percentage-of-recovery method is favored in cases involving a common fund. *See id.* The percentage-of-recovery method "is designed to allow courts to award fees from the fund 'in a manner that rewards counsel for success and penalizes it for failure.' " *Id.* (citing *In re Prudential*, 148 F.3d at 333).

The Court chooses to use the percentage-of-recovery method to analyze the fee application here. The Objectors seek fees based on their success in adding value to the class settlement, and the percentage-of-recovery method is designed to reward attorneys for such successes. Moreover, the fee award to the Objectors is intended to reflect only the value they added to the settlement. By this award, the Court does not mean to reimburse the Objectors for all of their litigation costs. While the attorneys have submitted detailed billing records to this Court, along with explanatory affidavits, the Court believes that based on those records, it cannot make an accurate determination of the precise fees

---

**3.** While the Court does not believe that a fee award is appropriate for these attorneys, the remaining attorneys who do receive fee awards are not prohibited from distributing the awards as they see fit.

incurred objecting to the settlement and fee award. The Court believes that the percentage-of-recovery method will yield a more accurate and equitable fee award.

■ To determine the appropriate percentage, the Court weighs the following factors identified by the Third Circuit as a guide in making a reasonable fee determination:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiff's counsel; and (7) the awards in similar cases.

*In re Cendant Corp. PRIDES Litig.*, 243 F.3d at 733 (quoting *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n. 1 (3d Cir.2000)). The Court will address each of these factors in turn.

1. *The Size of the Fund Created and the Number of Persons Benefitted*

■ The Court finds this to be the most important factor in this analysis. The Objectors contend that they have contributed approximately $56 million to the settlement. By the Court's estimation, the total value of that settlement is now approximately $4 billion. While $56 million is certainly a significant figure, it bears noting that it is only approximately 1.4% of the overall value of the $4 billion settlement fund.

In the March 8, 1999 stipulation between Class Counsel and the Objectors, the parties agreed that the objections to the notice materials and claim form were a material factor in the decision to amend such forms. The parties agreed that because of the amended forms, "at least 2–1/2% additional ADR claims (at least 12,500) were remediated at a score of "2" or higher that otherwise would not have been remedied. Co–Lead Counsel reasonably believes that the value of remediation of 12,500 ADR claims would exceed $50 million." The Objectors have provided the Court with the affidavit of Arthur Anderson Director Darryl G. Wagner. He opined that the use of the amended, final form, rather than the original form, increased the value of benefits to the class because:

- The Final Form's ease of use and the assistance in foreign languages resulted in a greater number of responses and, therefore, a greater number of remedies.
- The Final Form's clear instructions and clear question section resulted in more complete and accurate responses and, therefore, higher scores.
- The addition of the Final Form's question number 31, which asks for the policyholders' classification of the type of harm, improves the definition of remedy category resulting in higher benefits.

Verified Petition for Reasonable Attorneys' Fees, Costs and Expenses Submitted by Counsel for Krell and Johnson ("Verified Petition"), dated Sept. 15, 2000, at Ex. F, Affidavit of Darryl G. Wagner, at 2. Referring to the Affidavit of Robert L. Hoyer, which was relied on by this Court in determining the fee award to Class Counsel, Wagner further stated that approximately 13,965 claimants were impacted by the revised form. He divided those claimants into three categories:

- Approximately 2.25% of the ADR claimants (or approximately 12,565 claimants) completed the ADR process due to the Revisions.
- Approximately 0.15% of the ADR claimants (or approximately 840 ADR claimants) received a higher claim score due to the Revisions.

• Approximately 0.10% of the ADR claimants (or approximately 560 ADR claimants) received a different (improved) remedy due to the Revisions.

*Id.* at 3. Based on his analysis, Wagner concluded that the revised claim form contributed approximately $53,770,000 in additional value to the class.

The Court accepts these findings, but notes that the calculations were made in 1999. The Court believes that the revised form has since contributed more value to the class, albeit in an amount that is impossible to calculate. However, it is also true that, while the Objectors' concern about the original form may have prompted Class Counsel to revise the ADR claim form, the Objectors were not solely responsible for the format and content of the revised form.

The parties also stipulated, or at least lead counsel agreed not to dispute, that the Objectors, by appealing this Court's settlement and fee award to the Third Circuit, delayed the payment of approximately $41 million in fees and expenses for about two years, resulting in about $4.8 million in time value to Prudential. The Objectors estimate that at least $2.4 million was received by the class.

And finally, lead counsel agreed not to dispute that because of that delay, the final fee application was not made until the number of remediated ADR claims was better known, which provided an unspecified value to the Class. According to the Objectors, because of the delay, Class Counsel's fee award was dependent on the ADR process, and therefore, "Class Counsel's economic interests became squarely aligned with the class member's economic

interests." Verified Petition at 8. To support this proposition, the Objectors point to language in the Third Circuit's review of the fee award:

We note, however, that we have some doubt as to the ultimate effectiveness of the incentives created by the fee award. The court hoped that, by linking the fee award to a threshold number of responses, class counsel will have an incentive to remain involved. But here that threshold figure was easily met, and thus the incentive for class counsel's continued involvement has been removed. While we believe that incorporating such an incentive is appropriate, it would be arguably more effective to link the second half of the fee award to a threshold which is more indicative of the settlement's success. For example, basing the second portion of the fee on the number of claims actually remediated would better serve the district court's goal of encouraging class counsel's continued participation.

*In re Prudential,* 148 F.3d at 334 n. 110. Krell further submits that this Court responded to the Third Circuit's comment by delaying the final award of fees to Class Counsel, thereby aligning "Class Counsel's economic interests with that of the class." Verified Petition at 9.

Notwithstanding this Court's opinion regarding the merit of this argument, the Objectors have stated that without discovery, it is impossible to assign a monetary value to this benefit. *Id.* Because the Objectors have not conducted the necessary discovery, and because no value for this alleged benefit has been suggested to the Court, the Court declines to consider this benefit in its analysis.[4]

---

**4.** As discussed in this Court's second fee opinion, Class Counsel was limited by the settlement agreement to a fee award of $90 million. In its first fee opinion, the Court used the lodestar method to cross-check its fee award, and determined that a multiplier of 5.1 was appropriate. By the date of the second fee opinion, Class Counsel had expended so much additional time on behalf of the policyholders that the multiplier on a $90

Accordingly, for purposes of this motion, the Court accepts the estimate of the Objectors that their efforts contributed approximately $56 million to the value of the settlement fund. This factor weighs strongly towards approving the request for fees.

## 2. *The Complexity and Duration of the Litigation*

There can be no dispute regarding the overall complexity and duration of this nationwide class action lawsuit against Prudential. As set forth in the numerous opinions listed above, this case involved over 1.8 million claimants from all fifty states and the District of Columbia. The case involved numerous issues of federal and state law, and it was actively litigated for a period of over two years. The parties engaged in massive document discovery and depositions, and also briefed and argued a number of pretrial motions. The parties also negotiated a complex settlement, approved by the Court, that has resulted in a settlement fund of approximately $4 billion. Moreover, the Objectors took this case before the Third Circuit, and even attempted to bring it before the Supreme Court. This factor weighs in favor of approving the fee request.

## 3. *The Presence or Absence of Substantial Objections*

There have been no objections to the present request for fees, nor has there been any objection to the terms of the stipulation between the Objectors and Co-Lead Counsel. The Court notes that this factor does not carry the weight it would if this were an evaluation of a fee award for Class Counsel, and, notwithstanding Lead Counsel and the Objectors' stipulation, it does not consider the lack of objections to be strong evidence that the requested fee is fair and reasonable.

million fee had been reduced to 2.13. Accordingly, the Third Circuit's admonition in

## 4. *The Skill and Efficiency of the Attorneys Involved*

### a. *Counsel for Johnson*

The record before the Court indicates that counsel for Johnson have significant experience with class actions. Richard Rosenthal certified that he has been approved by courts as class counsel in at least four class actions, and has represented objectors in at least five other class actions. Lynde Selden II certified that he served as plaintiffs' counsel or counsel for an objector in at least ten class actions. The Court further finds that these attorneys handled themselves professionally and courteously throughout the proceedings.

However, it is difficult for the Court to determine whether the Johnson Objectors acted efficiently. They note that the balance of their efforts related to their intervention and their preparations for the Court's fairness hearing, conducted on February 25, 1997. While they filed an appeal to the Third Circuit on Johnson's behalf, they admit that "Mr. Malakoff and his firm undertook the lion's share of the appellate work." Based on the record before it, the Court concludes that in comparison to the Krell Objectors, the Johnson Objectors played a minor role in securing the benefits bestowed on the class. Indeed, the Court cannot decisively say that they did anything other than bolster the efforts of the Krell Objectors.

### b. *Counsel for Krell*

As for those Krell objectors, namely, Malakoff, the Court does not dispute that they are seasoned class action attorneys. Nor does the Court take issue with the important role an objector plays in a class action. The Court is mindful of the fact

regard to the second portion of the fee was premature and potentially misplaced.

that "[a]n objecting lawyer should not be expected to be a quiescent, listless participant in the proceedings without expressing contrary view or theories; the lawyer should have reasonable leeway for expression and argument." *In re Prudential,* 278 F.3d at 202 (Rosenn, J., concurring and dissenting). But even with those words in mind, the Court cannot find that Malakoff acted with any sense of efficiency. In fact, at many points during the course of this litigation it seemed as if Malakoff did everything he could to make this matter as inefficient and contentious as possible.

The Court does not take issue with the number of objections made by the Krell Objectors, for that is the role of the objector. The Court only wishes that Krell had been as concerned with the quality of the objections. As the Court noted in its fairness opinion, many of Krell's objections were not adequately reasoned or supported. *See, e.g., In re Prudential,* 962 F.Supp. at 507 ("Krell does not reason an argument, but expects the Court to extrapolate Krell's intended meaning."); 962 F.Supp. at 530 ("Krell, in keeping with his *modus operandi,* cites no authority in support of his objection, and his objection is spurious."). Even where Krell's objections had some merit or validity, the Court was forced to parse together his arguments. This was certainly not an efficient use of judicial time or resources.

Similarly, while aware that "[o]bjectors serve as a highly useful vehicle for members of the class and for the public generally," and that a lawyer for an objector who "raises pertinent questions concerning the conduct of Lead Counsel, the terms of the proposed settlement, and the costs and fees to be paid from the settlement fund … renders a service to the class [and] aids the court," *In re Prudential,* 278 F.3d at 202 (Rosenn, J., concurring and dissenting), the Court is also highly sensitive to

the fact that the Objectors, specifically Malakoff, were often more of an unjustifiable hindrance to the progression of this litigation. As noted by the Third Circuit:

> [Malakoff] multiplied the proceedings at nearly every turn, and increased the cost of this litigation accordingly. His baseless recusal motion required responses by Class Counsel and a hearing by Judge Wolin. His emergency motion to vacate the fee examiner's appointment, an appointment that he originally approved, also necessitated responses by Class Counsel and required Judge Wolin to write a thirteen page opinion in support of his order denying the motion. His demand for a key word search (after he failed to make any efforts to review the documents available at Class Counsel's New York Office) meant that Judge Wolin had to address the demand at a case management conference held to discuss the proposed settlement hearing. Malakoff's emergency motion demanding that Class Counsel fax charts summarizing the evidence to be used at the fairness hearing once again necessitated responses by Class Counsel and once again meant that Judge Wolin had to write an opinion and order denying the motion. His filing of two *identical* sanctions motions, despite the fact that they were filed under different provisions having different standards of proof, necessitated responses by Class Counsel and an examination and analysis by Magistrate Judge Pisano.

*Id.* at 190. The Court has no intention of punishing Malakoff for conduct for which he has already been sanctioned. However, because of this conduct, the Court finds that this factor weighs against granting the fee request.

*5. The Risk of Nonpayment*

The Objectors argue that they faced a risk of nonpayment comparable to the risk

faced by Class Counsel. In *Gunter,* the Third Circuit found that there was a risk of nonpayment "because the defendants were close to insolvency, and because other classes of plaintiffs in similar cases against the defendants had lost on similar theories." 223 F.3d at 199. In this case, there is nothing in the record which indicates that the Objectors ever faced the possibility of nonpayment due to a risk of insolvency or lack of assets.

However, this case did involve a risk of nonpayment derived from the Objectors' contingency fee arrangements with their clients. The Objectors faced the legitimate risk that they would not be paid for their considerable time and effort expended. However, unless they add value to the settlement, objectors generally are not compensated.

This Court is aware of the importance of encouraging attorneys to continue to accept complex cases on a contingency basis, and it does not wish to deter attorneys from that course. However, the Court finds that the risk of nonpayment is not a determinative factor in its current analysis.

### 6. The Amount of Time Devoted to the Case

The Objectors have devoted a significant amount of time to this matter. Malakoff's records indicate that between 1995 and 2000, attorneys and paralegals at his firm spent approximately 12,456.20 hours working on Prudential matters. Nonetheless, much of that time was foolishly spent on parochial matters that did little to advance the progress of the litigation. The time judiciously spent to increase the value of the settlement weighs in favor of the fee award.

Based on the foregoing factors, the Court concludes that the remaining Krell and Johnson Objectors are entitled to an award of attorneys' fees. The Court now turns to examine the final factor identified by the Third Circuit—awards in similar cases—in order to quantify that award.

### 7. The Awards in Similar Cases

This case is not the typical case, for the Court is assessing a fee award for objectors, not for class counsel. For guidance, the Court looks to other cases where courts have awarded fees to objectors. For example, in *In re Horizon/CMS Healthcare Corp. Securities Litigation,* the court noted that the work of the objectors "provided a useful, historical, and comparative backdrop so that the Court was not required to consider the request of lead counsel in a vacuum." 3 F.Supp.2d at 1215. The court then awarded the objectors 3% of the fees awarded to lead counsel.

The Objectors here state that they have requested approximately 3.5% of the $56 million benefit they conferred upon the class. For comparison, in this Court's second fee opinion regarding the award of fees to Class Counsel, the Court determined that Class Counsel was entitled to 7.5%, but was limited to their request of 4.8%. This Court noted that "[i]n addition to the fact that the quality of Class Counsel's work product was high, Class Counsel persisted and ultimately succeeded against extraordinary difficulty, and over opposition not only from Prudential but from within the ranks of plaintiffs themselves, most particularly the Krell Objectors." *In re Prudential,* 106 F.Supp.2d at 734.

Objectors claim that they seek an award totaling approximately 3.5% of the value conferred upon the class, or $2.25 million.[5]

---

**5.** By the Court's calculations, this request is actually above 4% of the value conferred (*i.e.,* $2.25 million exceeds 4% of $56 million)

In his supplemental verification, Malakoff states

> that he reviewed the attorney fee affidavits filed by the other twenty-five plaintiffs' counsel law firms in their joint fee petitions and the docket entries in this case in an attempt to determine the nature of their compensable services in this complex litigation. The professional services and expenses deemed "pre-objector phase" services compensable by MDF in their Fee Petition appear to consist of the same types of services (insofar as the nature of their services) that this Court has held to be compensable in approving Class Counsel's fee petition.

Supplemental Declaration of Michael P. Malakoff, ¶ 17. Malakoff clearly holds himself in the same category as Class Counsel, but the Court finds that there are marked differences between their respective roles in this litigation and between their just compensation. The value of the Court's award is only intended to compensate the Objectors for the benefit they conferred upon the class. *See Petruzzi's Inc. v. Darling–Delaware Co., Inc.*, 983 F.Supp. 595, 622 (M.D.Pa.1996) (using lodestar analysis, court noted that objector "will only be compensated for hours which were expended in a manner that benefitted that class as a whole"). While the role played by the Objectors in this litigation may have been extensive, the benefit they conferred upon the class is limited. As noted above, the value of that benefit is roughly 1.4% of the total value of the settlement fund (*i.e.*, $56 million exceeds 1.4% of $4 billion).

In light of these considerations, the Court feels that an award of 1.4% of the Class Counsel's award is appropriate here. Therefore, the Court will reduce the Objectors' award to $1,260,000. Moreover, the Court will not make a separate award for expenses. Class counsel were forced to fund their expenses from their $90 million award—and fairness requires the Objectors to do the same. Nor will the Court grant the Objectors interest on top of the fee award.[6] Therefore, the $1,260,000 award is intended to cover fees and expenses, and without interest. The Court is certain that counsel for Krell and Johnson will be able to amicably apportion the fee award and therefore will leave such a division to the parties themselves.

As a final matter, The Court will not conduct a lodestar analysis to cross-check the fairness of this fee award. An accurate lodestar analysis is not feasible based on Malakoff's antics and the record before the Court. While the Court does not doubt the veracity of the record submitted by the Objectors, the Court cannot accept the attorneys' division of compensable and non-compensable time, and based on the record before it, the Court is unable to define those boundaries on its own. The Court realizes that it has asked the parties to supplement the original filings with more detailed records, but it now finds that even with those records there is insufficient information to enable the Court to determine precisely which hours were devoted to efforts leading to the additional class benefits.

---

**6.** The Objectors cite no case to support the proposition that they are entitled to interest in addition to their fee award. Indeed, the caselaw examined by the Court above indicates that objectors do not generally receive a separate award of interest. *See In re Horizon/CMS Healthcare Corp. Sec. Litig.*, 3 F.Supp.2d at 1214–15; *Petruzzi's, Inc.*, 983 F.Supp. 595, 599 n. 4. While the March 8, 1999 Stipulation did provide for interest, the Court affirmatively refused to approve that Stipulation. Given the Court's previous disapproval of the Stipulation and the prevailing trend in the caselaw, the Court will not grant such an award here.

## CONCLUSION

For the foregoing reasons, the Objectors' joint motion for attorney's fees will be granted in the amount of $1,260,000. Class Counsel will be required to pay these fees out of the amount held in escrow for the Objectors. An appropriate Order is attached.