PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
———

Nos. 19-2313, 19-2314, 19-2315 and 19-2316
———

In re: S.S. BODY ARMOR I INC,
f/k/a Point Blank Solutions Inc, f/k/a DHB Industries Inc., et
al., Debtors

D. David Cohen and Carter Ledyard & Milburn LLP,
                                                    Appellants

———

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 1-15-cv-00633, 1-15-cv-01154, 1-18-cv-00349 &
1-18-cv-00634)
District Judge:  Honorable Maryellen Noreika

———

Argued December 10, 2019
Before:  RESTREPO, ROTH and FISHER, *Circuit Judges*.

(Filed: June 4, 2020)

Michael Busenkell
Gellert Scali Busenkell & Brown
1201 North Orange Street, Suite 300
Wilmington, DE 19801

Gary D. Sesser  *[ARGUED]*
Carter Ledyard & Milburn
2 Wall Street
New York, NY 10005
        *Counsel for Appellants*

Laura D. Jones
James E. O'Neill, III
Pachulski Stang Ziehl & Jones
919 North Market Street
P.O. Box 8705, 17th Floor
Wilmington, DE 19801

Alan J. Kornfeld  *[ARGUED]*
Elissa A. Wagner
Pachulski Stang Ziehl & Jones
10100 Santa Monica Boulevard
13th Floor
Los Angeles, CA 90067
        *Counsel for Appellee SS Body Armor I Inc. FKA Point Blank Solutions Inc, FKA DHB Industries Inc*

Frederick B. Rosner
The Rosner Law Group
824 North Market Street
Suite 810
Wilmington, DE 19801

James H. Hulme
Arent Fox
1717 K Street, N.W.
Washington, DC 20036

*Counsel for Appellees BRIAN K. RYNIKER, as Recovery Trustee of the Recovery Trust for SS Body Armor I., Inc*

———

OPINION OF THE COURT

———

FISHER, *Circuit Judge*.

Although this appeal is only the second time this case has reached our Court, since its genesis in the mid-2000s, this matter has traveled, in oft-unexpected ways, through bankruptcy, trial, and appellate courts throughout three United States jurisdictions. At this point, we are tasked with reviewing three orders issued by the Bankruptcy Court for the District of Delaware in 2015. The orders approve a settlement entered in the Chapter 11 bankruptcy case of S.S. Body Armor I, Inc., and either grant or deny related applications for attorneys' fees and expenses. Objector D. David Cohen and his counsel, the law firm of Carter Ledyard & Milburn LLP, whom we refer to jointly as "Cohen," appealed the orders to the District Court for the District of Delaware, which, after a lengthy stay, affirmed.

As we explain below, Cohen is entitled to attorneys' fees and expenses for his objection to the initial settlement in this case. Therefore, we will reverse in part the Bankruptcy Court's order that granted him fees on a contingent basis and will remand for determination of the appropriate amount of the fee award. We will, however, affirm the part of that order that denied Cohen's claim to attorneys' fees and expenses under the Bankruptcy Code. We will also affirm the Bankruptcy Court's order awarding fees to counsel in one of the underlying lawsuits. And, finally, we will affirm its 2015 approval of a settlement in this case.

3

**I.**

To adequately explain our decision, we must recount the history of this complex matter in some detail.

## A. Pre-Bankruptcy-Petition Litigation and the EDNY Settlement

In the fall of 2005, revelations surfaced that Body Armor—a publicly traded company—was manufacturing its body armor, which it sold to law enforcement agencies and the U.S. military, using substandard materials. Accordingly, its stock price plummeted, prompting shareholders to bring numerous actions in the District Court for the Eastern District of New York (EDNY). EDNY later consolidated the various suits into two actions: a shareholders' class action against Body Armor and several of its officers and directors, and a derivative action on behalf of Body Armor against specified officers and directors.

In late 2006, the parties to the class and derivative actions entered into a joint settlement (EDNY Settlement). Under this agreement, the class action would be settled through a combination of cash and shares of Body Armor's common stock, while the derivative action would be settled through Body Armor's adoption of various corporate governance policies and a $300,000 payment to appointed counsel (Derivative Counsel). The cash portions of the EDNY Settlement (Escrow Funds) were placed in escrow with counsel in the class action (Class Counsel).

The EDNY Settlement also contained a provision under which Body Armor agreed to release and indemnify its founder, and former Chairman and Chief Executive Officer, David H. Brooks, from any liability he might incur should the Securities and Exchange Commission (SEC) commence an action against him under § 304 of the Sarbanes-Oxley Act, 15

4

U.S.C. § 7243 (SOX § 304).[1] Cohen, who had been Body Armor's General Counsel and remained a shareholder, intervened in the derivative action and objected to the EDNY Settlement, particularly to the SOX § 304 release and indemnification.

Meanwhile, in early October 2007, before EDNY approved the EDNY Settlement, Body Armor restated its financial reports for 2003, 2004, and part of 2005. In response, the SEC sued Brooks in the Southern District of Florida (SDFL), seeking disgorgement of profits—allegedly amounting to $186 million—under SOX § 304. And later that month, Brooks was indicted in EDNY on various criminal charges, including fraud and insider trading. The SEC's action was then administratively closed pending the outcome of the criminal action against Brooks.

In July 2008, EDNY overruled Cohen's objections, approved the EDNY Settlement, and entered judgments in both the class and derivative actions. In doing so, it approved the payment of $300,000 from the settlement fund to Derivative Counsel, which was provisionally paid in 2008. Separately, it denied Cohen's application for attorneys' fees and expenses.

Cohen appealed EDNY's judgment in the derivative action, as well as its denial of his objection to the award of fees to Derivative Counsel and the denial of his application for his own attorneys' fees, to the United States Court of Appeals for the Second Circuit. Cohen was the only objector to appeal the

---

[1] SOX § 304 permits the SEC to require certain officers of a public company to repay "bonus[es] or other incentive-based or equity-based" income, and "any profits realized from the sale of [the company's] securities" that were earned during a period for which the company restates its financial reports because of misconduct. 15 U.S.C. § 7243(a).

approval of the EDNY Settlement. He argued on appeal that the settling parties could not indemnify Brooks against SOX § 304 liability. The SEC filed an amicus brief in support of his objection to the SOX § 304 indemnification.

In 2010, several events took place in rapid succession, altering the course of the various litigation streams. First, in April 2010, Body Armor petitioned for Chapter 11 bankruptcy protection in the Bankruptcy Court for the District of Delaware.

Later that year, in September 2010, following a tumultuous eight-month trial in EDNY, a jury convicted Brooks of an array of financial crimes. He was later sentenced to seventeen years in prison and ordered to pay restitution to Body Armor and his investor victims.[2] Brooks appealed his convictions and the restitution orders.

Also in September 2010, the Second Circuit vacated and remanded EDNY's judgment in the derivative action, holding—in a significant precedential opinion that agreed with Cohen's objections—that the settlement impermissibly released and indemnified Brooks against liability under SOX § 304. *Cohen v. Viray*, 622 F.3d 188, 195–96 (2d Cir. 2010).[3] The court expressly declined to address Cohen's claim for fees

---

[2] EDNY issued the criminal restitution awards pursuant to the Mandatory Victim's Restitution Act. Brooks was ordered to pay $53,912,545.62 to Body Armor and $37,584,301.30 to his investor victims.

[3] Specifically, the Second Circuit held that SOX § 304 does not create a private cause of action, *Cohen*, 622 F.3d at 193, and that the EDNY Settlement's "release and indemnification provisions attempt[ed] an end-run around § 304 that vitiate[d] the SEC's role and [was] inconsistent with the law," *id.* at 195.

and his objection to Derivative Counsel's fees, directing EDNY to "reexamine those issues . . . in the context of a revised settlement or the outcome of further litigation." *Id.* at 196.

Finally, in October 2010, the Government commenced a civil forfeiture proceeding and ultimately restrained roughly $168 million of Brooks-related assets. Body Armor and Class Plaintiffs petitioned the Department of Justice (DOJ) to use the assets to compensate them for losses they suffered as a result of Brooks's misconduct.[4] The proceeding was then stayed—like the SEC's action in SDFL—pending Brooks's criminal trial and appeals.

## B. Post-Bankruptcy-Petition Proceedings and the 2015 Settlement

After Body Armor filed its Chapter 11 petition, litigation in the class and derivative actions migrated, in large measure, to the Bankruptcy Court, which would need to approve any revised settlement.

### 1. The 2015 Settlement

After the Second Circuit vacated the judgment approving the EDNY Settlement in the derivative action, the parties to the class and derivative actions engaged in renewed negotiations, ultimately agreeing to a new settlement (2015 Settlement).

---

[4] The U.S. Attorney General may use forfeited assets "as restoration to any victim." 18 U.S.C. § 981(e)(6); Justice Manual, 9-121.000-Remission, Mitigation, and Restoration of Forfeited Properties, U.S. Dep't of Just., https://www.justice.gov/jm/jm-9-121000-remission-mitigation-and-restoration-forfeited-properties (last updated Oct. 2010).

The 2015 Settlement, which was supported by Body Armor's unsecured creditors and equity holders, shared some of the features of the EDNY Settlement. For example, it provided that the class and derivative actions would be dismissed, that Derivative Counsel would retain their $300,000 fee, and that the Escrow Funds—which, as noted above, had been placed in escrow with Class Counsel under the EDNY Settlement—would be released to Class Plaintiffs. It also included some new features. For instance, of the Escrow Funds released to Class Plaintiffs, $20 million would be loaned to Body Armor on an interest-free, non-recourse basis to fund its Chapter 11 plan of liquidation and permit it to exit Chapter 11.[5] And of that $20 million loan, $1.5 million would cover Class Counsel's fees and expenses. The 2015 Settlement also provided that Brooks's criminal restitution awards would be allocated between Body Armor and Class Plaintiffs.

In July 2015, the Bankruptcy Court issued an order approving the agreement, overruling Cohen's objections to several terms. Cohen appealed the Bankruptcy Court's approval of the 2015 Settlement to the District Court for the District of Delaware. Although Cohen's appeal remained pending, certain pieces of the 2015 Settlement, including Class Plaintiffs' loan to Body Armor, became effective and occurred in November 2015 when the Bankruptcy Court confirmed Body Armor's Chapter 11 plan.

### 2. Fee Disputes Related to the 2015 Settlement

When it approved the 2015 Settlement, the Bankruptcy Court set a separate deadline for related fee applications.

---

[5] Although Chapter 11 cases are typically reorganization bankruptcies, Body Armor took the unusual step of proposing a plan of liquidation under Chapter 11.

Cohen, still eager to earn fees for his efforts in objecting to the EDNY Settlement of the derivative action, sought $1.86 million in attorneys' fees and expenses.[6] The Bankruptcy Court granted Cohen's request but specified that he would earn a fee only if Body Armor later received funds on account of the SOX § 304 claim.[7] It also denied Cohen's separate claim for fees and expenses for making a "substantial contribution" under the Bankruptcy Code.

Separately, Cohen objected to the $300,000 payment to Derivative Counsel. As recounted above, the EDNY Settlement had granted Derivative Counsel $300,000 in fees and expenses—an award that EDNY initially approved over Cohen's objection and which was provisionally paid in 2008. The Bankruptcy Court rejected Cohen's objections and permitted Derivative Counsel to retain the award.

Cohen appealed both fee orders to the District Court for the District of Delaware. However, his appeal of the fee orders and his appeal of the approval of the 2015 Settlement were stayed for several years. The District Court lifted the stay in May 2018. As we explain in more detail below, these orders are at the center of the present appeal.

## C. Brooks's Death and the Global Settlement

In October 2016, as proceedings continued in Bankruptcy Court, Brooks died unexpectedly. The Second Circuit held that his death abated his criminal convictions and the criminal restitution awards ordered against him. Because

---

[6] Cohen's requested amount—$1.86 million—was one percent of the purported value of the SEC's SOX § 304 claim.

[7] At the time, the SEC's action remained administratively closed in SDFL pending the outcome of Brooks's criminal appeals.

the 2015 Settlement was predicated, in part, upon Brooks's criminal restitution awards, the abatement of those recoveries, once again, changed the course of the litigation.

The SEC's action—which had been stayed pending Brooks's criminal trial and appeals—was reopened in SDFL. The civil forfeiture proceeding was also reopened, and in mid-2018, DOJ granted Body Armor's and Class Plaintiffs' earlier requests that it use the restrained assets to compensate them for losses they suffered as a result of Brooks's misconduct.[8]

In the meantime, the parties to the 2015 Settlement worked to renegotiate a revised agreement because part of the 2015 Settlement had been funded by Brooks's criminal restitution awards, which were abated by his death. As a replacement source of funds, the parties turned to the assets seized in the civil forfeiture proceeding and the DOJ letters distributing those assets. Their term sheet for a new settlement (Global Settlement) provided that they would agree to the forfeiture of the Brooks-related assets, which would pay the United States for costs incurred in the forfeiture proceeding and Brooks's criminal case, with the remainder distributed pro rata to Body Armor and Class Plaintiffs.

Around the same time, the SEC and Brooks's estate entered into a consent judgment to resolve the SEC's action, which was approved by SDFL. The judgment provided that the SOX § 304 claim would be deemed satisfied by the distribution of assets in the civil forfeiture proceeding, as provided in the Global Settlement.

---

[8] Body Armor's request was approved in the rough amount of $78.8 million and that of Class Plaintiffs was approved in the approximate amount of $81.5 million.

**D. 2015 Fee Order Appeals**

Our review concerns the Bankruptcy Court's conditional grant of Cohen's attorneys' fees and expenses, award of fees to Derivative Counsel, and approval of the 2015 Settlement. Cohen appealed these rulings to the District Court for the District of Delaware. But the appeals were stayed pending the fallout from Brooks's death and the renegotiation of a settlement. The District Court lifted the stay in May 2018 after Body Armor informed it that the Global Settlement was nearly finalized. In June 2019, the Court affirmed the Bankruptcy Court in all respects. Cohen appeals.

## II.

The District Court had jurisdiction to hear Cohen's appeals from the Bankruptcy Court under 28 U.S.C. § 158(a)(1). We have jurisdiction pursuant to 28 U.S.C. §§ 158(d)(1) and 1291. We "exercise the same standard of review as the District Court [did] when it reviewed the original appeal from the Bankruptcy Court." *Binder & Binder, P.C. v. Handel (In re Handel)*, 570 F.3d 140, 141 (3d Cir. 2009). Therefore, our "review of the [D]istrict [C]ourt effectively amounts to review of the [B]ankruptcy [C]ourt's [orders] in the first instance." *In re Sharon Steel Corp.*, 871 F.2d 1217, 1222 (3d Cir. 1989).

**A. Award of Fees to Cohen**

Cohen primarily challenges the Bankruptcy Court's 2015 order regarding his fee application. As outlined above, after the Bankruptcy Court approved the 2015 Settlement, it granted Cohen's application for attorneys' fees and expenses in part and denied it in part. First, the Court "awarded [Cohen] a fee for [his] efforts in preserving the SOX [§] 304 Claim," but it stated that the amount would "be determined" later and would be "paid solely from funds received by [Body Armor]

11

or [its] successors-in-interest on account of the SOX [§] 304 Claim, if any." J.A. 8–9. "For avoidance of doubt," the Court emphasized, "if [Body Armor does] not receive any funds on account of the SOX [§] 304 Claim, no fee shall be payable." J.A. 9. Second, the Court also denied Cohen's separate claim of substantial contribution under the Bankruptcy Code. J.A. 9. The District Court affirmed.

Cohen argues that the Bankruptcy Court erred in granting his request for fees and expenses on a contingent basis and in denying his substantial-contribution claim. We address each challenge in turn.

## 1. Objectors' Attorneys' Fees and Expenses

We review a bankruptcy court's fee award "for an abuse of discretion." *Zolfo, Cooper & Co. v. Sunbeam-Oster Co.*, 50 F.3d 253, 257 (3d Cir. 1995). An abuse of discretion occurs "if the judge fails to apply the proper legal standard or to follow proper procedures[,] . . . or bases an award upon findings of fact that are clearly erroneous." *Id.* (citation omitted).

### i. Legal Standard

Although "the general American rule is that attorneys' fees are not ordinarily recoverable as costs, both the courts and Congress have developed exceptions to this rule for situations in which overriding considerations indicate the need for such a recovery." *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 391–92 (1970).

For example, courts have recognized that lead counsel in both class-action and derivative suits may recover fees and expenses for their efforts. Lead class-action counsel are typically compensated pursuant to the "common fund doctrine," which provides that "a private plaintiff, or plaintiff's attorney, whose efforts create, discover, increase, or preserve *a fund* to which others also have a claim, is entitled to recover

12

from the fund the costs of his litigation, including attorneys' fees." *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 187 (3d Cir. 2005) (emphasis added) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 820 n.39 (3d Cir. 1995)). On the other hand, "plaintiffs in a shareholders' derivative action may . . . recover their expenses, including attorneys' fees, from the corporation on whose behalf their action is taken if the corporation derives a benefit, *which may be monetary or nonmonetary*, from their successful prosecution or settlement of the case." *Shlensky v. Dorsey*, 574 F.2d 131, 149 (3d Cir. 1978) (emphasis added).

In addition, courts, including our own, have said that objectors to settlements of class-action and derivative lawsuits may be entitled to attorneys' fees and expenses when they improve the settlement. *See Welch & Forbes, Inc. v. Cendant Corp. (In re Cendant Corp. PRIDES Litig.)*, 243 F.3d 722, 743 (3d Cir. 2001) (citing *White v. Auerbach*, 500 F.2d 822, 828 (2d Cir. 1974)). Federal procedural rules dictate that such settlements must be approved by a judge and notice of the agreement must be provided to certain persons and entities. *See* Fed. R. Civ. P. 23(e), 23.1(c); Fed. R. Bankr. P. 9019(a). "One of the purposes of the dual [approval and notice] requirement . . . is to prevent the unrighteous compromise of just . . . actions." *White*, 500 F.2d at 828 (internal quotation marks and citations omitted). Objectors, like these procedural safeguards provided for in the rules, "have a valuable and important role to perform in preventing collusive or otherwise unfavorable settlements." *Id.* Therefore, they "are entitled to . . . attorneys' fees and expenses where a proper showing has been made that the settlement was improved as a result of their efforts." *Id.*[9]

---

[9] A judge decides two inquiries: "whether, and in what amount," fees should be awarded. *White*, 500 F.2d at 828. We

Although courts agree on the general contours of the standard set out in *White*, it is often unclear how judges are to determine whether "the settlement was improved as a result of [an objector's] efforts." *Id.* Some courts meld this objector standard with a version of the common fund doctrine, requiring that the objector create, preserve, or somehow contribute to a monetary recovery to be entitled to a fee. *See, e.g.*, *Levitt v. Sw. Airlines Co. (In re Sw. Airlines Voucher Litig.)*, 898 F.3d 740, 744–46 (7th Cir. 2018) (awarding fees to objector to class-action settlement under common fund doctrine); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051–52 (9th Cir. 2002) (denying fees for objectors to class-action settlement because they "did not increase the fund or otherwise substantially benefit the class members"). Other courts award fees when the objector merely transformed the litigation into a more balanced proceeding or otherwise influenced the court's decision to approve or deny a settlement. *See, e.g.*, *In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 367–68 (E.D.N.Y. 2010) (objections "served to clarify the proposed Settlement and [the corporation's] positions regarding implementation of the Settlement"); *Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 412–13 (E.D. Wis. 2002) (objector preserved class members' claims, convinced parties to modify settlement term, and "aided the court and enhanced the adversarial process"); *Howes v. Atkins*, 668 F. Supp. 1021, 1027 (E.D. Ky. 1987) (objector "ably performed the role of devil's advocate . . . even though the settlement [terms were]

---

are at the first step—that is, we are tasked with reviewing *whether* Cohen is entitled to a fee. *See* Appellants' Reply Br. 10 n.6 ("The amount of [Cohen's] fee award has not been yet litigated and is not presently before this Court.").

not improved"); *Frankenstein v. McCrory Corp.*, 425 F. Supp. 762, 767 (S.D.N.Y. 1977) (objections, although ultimately overruled, "transformed the settlement hearing into a truly adversary proceeding" and "cast in sharp focus the question of the fairness and adequacy of the settlement").

We have not had much occasion to consider fee awards to settlement objectors. When we have, our statements have suggested that, at least in the class-action context, an objector may need to improve a settlement monetarily. In *Cendant PRIDES*, we remanded for the district court to reconsider its denial of an objector's fee application. We first quoted *White* and stated that objectors are entitled to compensation when "the settlement was improved as a result of their efforts." *In re Cendant Corp. PRIDES Litig.*, 243 F.3d at 743 (quoting *White*, 500 F.2d at 828). We then noted that the objector "called our attention to the many [problematic] aspects of [class counsel's] fee award . . . which we . . . found require[d] reconsideration," and we remanded for the district court to "evaluate the value of the benefit of the [objector's] contribution to the ultimate fee . . . and to compensate the [objector] to that extent." *Id.* at 744. We later elaborated on this holding in a related case, stating that:

> [A] court can usually determine whether an objector has improved the class's recovery, and can often measure the amount of that improvement. If the objection is meritorious, it will usually lead to an increase in the settlement, a reallocation of the award among different plaintiffs, or a decrease in the fees paid to lead counsel. The court will thus be able to measure the dollar value of the objector's contribution to the class's net recovery.

15

*In re Cendant Corp.*, 404 F.3d at 201 n.17.

Nevertheless, in neither of these opinions, nor in any other case, have we held that a trial court is required to consider only an objector's monetary improvement to a settlement in deciding whether to award fees. In addition, we have never held that a settlement objector will only improve a settlement if he creates, preserves, or contributes to a common fund. Indeed, we used equivocal language in *In re Cendant Corp.*, saying: "a court can *usually* determine" if the objection enhances the class's recovery; the court "can *often* measure the amount of that improvement"; and a successful objection "will *usually*" augment the settlement. *Id.* (emphases added). Furthermore, certain district courts within our Circuit have noted that objectors' fees may be awarded for non-pecuniary contributions. *See, e.g.*, *Dewey v. Volkswagen of Am.*, 909 F. Supp. 2d 373, 395 (D.N.J. 2012) ("[O]bjectors must have economically benefitted the class or, at the very least, shown that a court adopted their objection."). We now clarify that, in both class and derivative actions, trial courts may, in their discretion, consider non-monetary factors in determining whether an objector's participation improved a settlement.

Most of the cases addressing objectors' fees, including the *Cendant* litigation, have involved objectors to class-action settlements. As a logical matter, however, non-pecuniary improvements to settlements are even more relevant in the derivative-action context than in the class-action context. The purpose of a class action is to vindicate direct harm to the class—typically financial. So, whether the objector created or enhanced a monetary recovery for class members will often be an adequate measurement of whether the objector improved the settlement. When shareholders bring claims on behalf of a corporation, however, such improvements may be less susceptible to straightforward financial evaluation. Thus, the

16

clarification we announce today will likely apply with particular force when it comes to evaluating settlements of derivative actions.

Our conclusion—that courts may consider non-monetary improvements to settlements when assessing whether to award attorneys' fees and expenses to settlement objectors—leads us to another observation: despite the uncertainty surrounding what it means to improve a settlement, courts universally acknowledge that a trial court exercises "broad discretion" in determining "whether" to award fees. *White*, 500 F.2d at 828. As noted above, settlements must be approved by a judge. *See* Fed. R. Civ. P. 23(e), 23.1(c); Fed. R. Bankr. P. 9019(a). The value an objector provides is assisting the court in determining whether to approve the settlement, and, therefore, the court can easily assess whether the objector improved the settlement or otherwise enhanced its review.

Accordingly, a bankruptcy or district court has broad discretion in evaluating whether a settlement objector improved the settlement because that court, in the ordinary case, presides over both the settlement and the corresponding fee applications. The court can therefore "easily evaluate not only the quality of the objector's work but also the impact it had on the court's ultimate decision." *In re Cendant Corp.*, 404 F.3d at 201 n.17. The trial court, in short, "is in the best position to determine whether the participation of objectors assisted the court and enhanced the recovery." *White*, 500 F.2d at 828; *see also Goldberger v. Integrated Res.*, 209 F.3d 43, 47 (2d Cir. 2000) (noting that the deferential abuse of discretion standard "takes on special significance when reviewing fee decisions").

Nevertheless, unusual situations may arise in which such significant discretion should be cabined. In *White*, for example, the Second Circuit reversed the district court's denial

17

of fees to settlement objectors and remanded for the court to determine "to what extent, if any, [the judge who presided over the settlement but died before considering fee applications] may have been influenced by [the] objectors' contentions." 500 F.2d at 823 n.1, 828–29; *see also Dubbin v. Union Bank of Switz. (In re Holocaust Victim Assets Litig.)*, 424 F.3d 150, 158 (2d Cir. 2005) (finding *White* inapposite because same judge "presided over both the settlement and the fee application, and his assessments of [the objector's] contributions should therefore be accorded deference").

In sum, a settlement objector is entitled to attorneys' fees and expenses when he improves the settlement. The objector is not invariably required to create, preserve, or contribute to a common fund, and the court may consider both (or either) pecuniary and non-pecuniary factors in determining whether the objector is entitled to fees. We typically accord significant deference to the trial court's determination because it is usually in the best position to determine whether the settlement was improved as a result of the objector's efforts. Such discretion may be narrowed, however, in the unusual case in which the judge reviewing fee applications was not in the best position to assess the objector's contribution.

### ii. Cohen Is Entitled to Attorneys' Fees and Expenses

The Bankruptcy Court erred in awarding Cohen a conditional fee. First, this case presents the unusual situation in which the judge reviewing the fee application did not preside over the settlement, and we will cabin the Bankruptcy Court's expansive discretion accordingly. Second, Cohen's objection improved the settlement of the derivative action. Thus, he is entitled to attorneys' fees and expenses for his efforts related to that objection.

To start, this case is unusual because Bankruptcy Judge

18

Sontchi, who granted Cohen's fees on a contingent basis, did not preside over the EDNY Settlement, to which Cohen objected in 2006, and which Cohen then successfully appealed to the Second Circuit. Indeed, this case presents an even more extreme version of the unusual situation presented in *White*. By the time Judge Sontchi passed on Cohen's fee application in late 2015, nearly a decade had elapsed since Cohen lodged his objection with EDNY and approximately five years had passed since the Second Circuit vindicated his objection to that settlement's release and indemnification. Judge Sontchi considered Cohen's fee application in the context of the renegotiated 2015 Settlement, which did not include the illegal provisions. Thus, Judge Sontchi was not in the best position to assess Cohen's contribution to the EDNY Settlement and its progression into the 2015 Settlement because he entered the litigation midstream and in an entirely different context.

Such a conclusion is strengthened by our consideration of Judge Sontchi's statements regarding the Bankruptcy Court's specific role in 2015. When he approved the 2015 Settlement, he emphasized: "My focus is on the debtor and the debtors' estates, and its creditors as they're affected by the estate" and "what I'm tasked with . . . under the code[,] . . . is to figure out whether this settlement makes sense for the debtors' estates." J.A. 637–39. Judge Sontchi's notion of what it meant for Cohen, as an objector, to improve the settlement was heavily, and understandably, influenced by the circumstances of Body Armor's bankruptcy proceedings. Rather than considering how Cohen's objection to the EDNY Settlement led to the favorable 2015 Settlement by, for example, eliminating illegal provisions and avoiding a potential indemnification obligation, the Bankruptcy Court was singularly focused on the real-time monetary benefit to Body Armor's estate. Accordingly, we will narrow the broad

19

deference we traditionally accord to that Court's determinations.

The Bankruptcy Court erred in concluding that Cohen was entitled only to a contingent fee. Although the Court did not state what standard it applied, the order essentially requires Cohen to demonstrate that he created or contributed to a common fund. *See* J.A. 9 ("[I]f the Debtors do not receive any funds on account of the SOX [§] 304 Claim, no fee shall be payable."). Rather than viewing the creation of a common fund as one factor to consider, the Bankruptcy Court believed that the creation of, or monetary contribution to, a common fund was a prerequisite to awarding any fee. To be sure, at the hearing on Cohen's fee application, the Bankruptcy Court asked: "What's the non-pecuniary benefit?" J.A. 1704. However, it went on to stress that "no funds have been received by the debtor[] in connection" with the SOX § 304 claim. J.A. 1712. And it stated: "[T]he debtor hasn't seen [one dime][, t]here hasn't been one benefit to this debtor, not one benefit to this debtor as a result of [Cohen's] work." J.A. 1705.[10]

---

[10] The District Court held that the Bankruptcy Court's conditional fee award is appropriate because it does not preclude Cohen from potentially recovering fees under the 2018 Global Settlement. *See Cohen v. SS Body Armor I, Inc. (In re SS Body Armor I, Inc.)*, Nos. 15-633, 15-1154, 18-349, 18-634, 2019 WL 2344038, at *12 (D. Del. June 3, 2019) (finding that the Bankruptcy Court's order "does not require that [Cohen] create a common fund solely from the outcome of the SOX § 304 Claim or use any language that would foreclose relief under the circumstances of the Global Settlement"). It is true that the order does not require that Cohen create a common fund standing alone. But it does dictate that Body Armor must receive some funds "on account of" the SOX § 304 claim. As

20

The Bankruptcy Court erred in taking such a narrow view of Cohen's contribution. Cohen did more than just preserve the possibility of the $186 million recovery for Body Armor under SOX § 304—although that benefit was certainly significant.[11] His objection to and successful appeal of the EDNY Settlement also stripped the agreement of a potential $186 million indemnification obligation to Brooks, which would have negated any SOX § 304 recovery. The indemnification was, according to Brooks's counsel, an "essential" and "key" term of the EDNY Settlement, which was "negotiated" and "fought over" and "was one of the most important things . . . Brooks got" in exchange for his payment to the settlement. J.A. 1366; *see also* J.A. 1356–59. In addition, in eliminating the indemnification obligation, Cohen also ensured that the settlement would not be vulnerable to attack for containing an illegal provision as one of its "essential" and "key" terms.

Furthermore, those involved in this case uniformly recognize that the latter settlements were better for Body Armor—and other claimants—than the EDNY Settlement.

we have explained, this is not the appropriate standard. Also, the District Court's repeated emphasis on the fact that Cohen may still recover fees under the Global Settlement ignores the issue on appeal—whether the Bankruptcy Court erred in awarding a contingent fee in the first place.

[11] Cohen also argues that his preservation of the SOX § 304 claim provided a "backstop," which would ensure Body Armor and Brooks's victims would recover if his criminal convictions were overturned or abated. This became even more important after Brooks died in prison and the criminal restitution orders were in fact abated.

After Body Armor petitioned for bankruptcy protection and while Cohen's appeal was pending in the Second Circuit, Body Armor admitted that the EDNY Settlement was not a favorable agreement and moved to reject it "for a list of reasons . . . . [f]irst, and . . . foremost" of which was that "the settlement . . . of the derivative action ha[d] a release of . . . Brooks." J.A. 1387–88. Body Armor also admitted that the EDNY Settlement did not become effective "[d]ue to the pendency of [Cohen's] appeal." Bankr. Ct. Docket No. 589, at 9.

The fact that the EDNY Settlement did not become effective due to Cohen's appeal also meant that the Escrow Funds were not distributed pursuant to that agreement. Thus, Cohen's objection helped to preserve the money which later funded (in part) the 2015 Settlement and Body Armor's plan to exit Chapter 11. As explained above, under the 2015 Settlement, Class Plaintiffs agreed to loan $20 million of the funds they received as part of the settlement to Body Armor on an interest-free, non-recourse basis. Body Armor's Chief Restructuring Officer testified that this loan was "extremely important." J.A. 335. He stated that if Body Armor had been required to seek outside financing, it would have cost over $15 million and "would [have] eliminate[d] any recovery to [Body Armor's] equity holders and [would have] significantly impair[ed] the recovery to [Body Armor's] unsecured creditors." J.A. 447.

While Body Armor recognized in 2010 that the EDNY Settlement was not a favorable agreement, its counsel now describes the ultimate result reached in this case as a "home run." Oral Arg. at 22:54–23:02. Similarly, the Bankruptcy Court has repeatedly emphasized that the 2015 Settlement was "a good settlement" and "a very good result for the estate." J.A. 1714; *see also* J.A. 637–38 ("There is no question at all that this is a good deal for the debtor. . . . I [also] find it highly

significant that both committees, class counsel and the debtors, all support the settlement.").

Beyond the understanding that the latter settlements achieved in this case were superior to the EDNY Settlement, there is also widespread recognition that Cohen's objection contributed to that evolution. For example, Body Armor's counsel have said that Cohen made "a contribution, and we've acknowledged that . . . repeatedly." J.A. 1682. The Bankruptcy Court has stated: "I think it's a good settlement. And . . . I think one of the reasons we're here today are the efforts of Mr. Cohen and his counsel." J.A. 1714–15. And we have also recognized Cohen's contribution. *See S.S. Body Armor I., Inc. v. Carter Ledyard & Milburn LLP*, 927 F.3d 763, 775 (3d Cir. 2019) (affirming denial of emergency stay but noting Cohen "showed tremendous skill and expended substantial time in preserving a highly valuable claim").

Moreover, both Class Counsel and Body Armor's counsel have acknowledged that Cohen should earn a fee for his efforts. Class Counsel stated: "I don't have a problem with [Cohen] arguing as to why his fees should be paid in connection with his appeal. I don't have a problem with that. I don't think anyone can dispute it." J.A. 1372–73. And at oral argument, Body Armor's counsel admitted that Cohen provided a benefit to the bankruptcy estate and conceded Body Armor's willingness to pay him fees. Oral Arg. at 22:24–22:38.

Finally, we note that our holding today accords with our Court's interest in "[a]ssuring fair and adequate settlements." *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1310 (3d Cir. 1993). Meritorious objectors, of course, "play an important role" in advancing that interest "by giving courts access to information on the settlement's merits" in situations in which "judges no longer have the full benefit of the adversarial process." *Id.*

In sum, under the unique facts of this case, Cohen is

entitled to an award of fees and expenses for his efforts in objecting to the EDNY Settlement.[12] We conclude only that he earns a fee without any contingency. We do not rule on the appropriate amount of the fee or how it should be calculated.[13] Nor do we rule on the method by which it will be paid.

## 2. Substantial Contribution

Cohen also challenges the Bankruptcy Court's denial of his substantial-contribution claim. In reviewing the determination of whether there has been a substantial contribution under the Bankruptcy Code, "[w]e exercise plenary review over the district court's decision, as well as over the legal determinations of the bankruptcy court." *Lebron v.*

---

[12] Cohen notes that he has "emphatically raised" whether "vindication of the public interest" alone is a sufficient basis to support an award of attorneys' fees to an objector. Appellants' Reply Br. 6. Because we hold that Cohen improved the settlement in other, more direct ways, we need not reach this question. We note, however, that the standard for awarding fees to objectors—whether the objector *improved the settlement*—is tied to the settlement reached in the respective case.

[13] Our Court recognizes two methods for making such calculation—the lodestar and the percentage-of-recovery. *See S.S. Body Armor I.*, 927 F.3d at 773. The lodestar approach is often used in statutory fee-shifting cases but may be used in other circumstances, "where 'the nature of the settlement evades the precise evaluation needed for the percentage[-]of[-]recovery method.'" *Id.* at 774 (alteration in original) (quoting *In re Gen. Motors Corp.*, 55 F.3d at 821). The percentage-of-recovery method is "[g]enerally used in common fund cases." *Id.* at 773.

*Mechem Fin. Inc.*, 27 F.3d 937, 942 (3d Cir. 1994). "[W]e review the bankruptcy court's factual findings for clear error." *Id.*

The Bankruptcy Code permits the payment of "administrative expenses," including the "reasonable compensation for professional services rendered by an attorney" of "an equity security holder . . . in making a substantial contribution *in a case under chapter . . . 11*." 11 U.S.C. § 503(b)(3)(D), (b)(4) (emphasis added). There has been a substantial contribution when "the efforts of the applicant resulted in an actual and demonstrable benefit to the debtor's estate and the creditors." *Lebron*, 27 F.3d at 944 (quoting *Haskins v. United States (In re Lister)*, 846 F.2d 55, 57 (10th Cir. 1988)).

Cohen argues that he provided a substantial contribution to Body Armor's estate.[14] However, even if he did make a substantial contribution, he did not do so "in a case under chapter . . . 11." 11 U.S.C. § 503(b)(3)(D). Rather, the expenses he incurred in making a substantial contribution accrued months and years before Body Armor petitioned for bankruptcy. To be sure, there is "no across-the-board bar" to recovery of pre-bankruptcy-petition expenses that benefit the estate. *Lebron*, 27 F.3d at 945. But here, even if Cohen would not have undertaken his efforts "absent an expectation of reimbursement," he certainly did not undertake those efforts under Chapter 11 or with "an expectation of reimbursement from [Body Armor's Bankruptcy E]state." *Id.* at 944; *see also*

---

[14] Cohen's substantial-contribution claim "admittedly is a backup argument." J.A. 1667–68. He emphasizes that any substantial-contribution award would "reduce, and not replace, the legal fee to which [he is] entitled" as a settlement objector. Appellants' Br. 36 n.12.

*In re Lister*, 846 F.2d at 57 (denying substantial-contribution claim for pre-petition efforts because creditor was "unaware of the pendency of bankruptcy proceedings until after the petition had been filed [so a]ny benefit accruing to the bankruptcy estate as a result of these efforts was only incidental").

**B. Award of Fees to Derivative Counsel**

Cohen argues that the Bankruptcy Court abused its discretion in issuing an order that approved the provision of the 2015 Settlement that permitted Derivative Counsel to retain $300,000 in fees. As explained above, the EDNY Settlement provided for a $300,000 payment to Derivative Counsel for their efforts in securing various corporate governance reforms. These fees were provisionally paid when EDNY approved the EDNY Settlement, and the 2015 Settlement permitted Derivative Counsel to retain the fees. The Bankruptcy Court, overruling Cohen's objection, approved this provision. The Court explained: "[T]here can be no question that there was a benefit to the debtor, at least pre-petition, and arguably post-petition, that resulted from the actions of [D]erivative [C]ounsel, holding aside the [SOX § 304] indemnification issue." J.A. 1713.

"A plaintiff should not receive a fee in derivative litigation unless the corporation . . . receives some of the benefit sought in the litigation or obtains relief on a significant claim in the litigation." *Zucker v. Westinghouse Elec. Corp.*, 265 F.3d 171, 176 (3d Cir. 2001). This benefit "may be monetary or nonmonetary." *Shlensky*, 574 F.2d at 149. We review both the Bankruptcy Court's approval of a settlement and its fee determinations for abuse of discretion. *Zolfo, Cooper & Co.*, 50 F.3d at 257.

Cohen argues that Derivative Counsel should not be entitled to keep these fees because they were awarded based on short-lived corporate governance reforms in the EDNY

Settlement, which never went into effect. Furthermore, he argues that fees should be denied because rather than protecting Body Armor's shareholders, Derivative Counsel participated in and promoted a settlement that included an illegal indemnification. He essentially claims that it is inequitable for Derivative Counsel to reap rewards for their contributions to the EDNY Settlement when that settlement included illegal provisions, while he might receive nothing for providing far more substantial benefits to Body Armor.

Cohen's arguments, which are notably short on supporting authority, do not provide a basis to hold that the Bankruptcy Court abused its discretion in concluding that Body Armor received a benefit due to the efforts of Derivative Counsel. That is particularly so when the Bankruptcy Court took into account the SOX § 304 "indemnification issue."

## C. Approval of the 2015 Settlement

Finally, Cohen argues that the Bankruptcy Court abused its discretion in approving the 2015 Settlement. He does not challenge the agreement's underlying merits; rather, he takes issue with its provision for payment to Class Counsel.[15] The 2015 Settlement provided that Class Plaintiffs would loan Body Armor $20 million on an interest-free, non-recourse basis to permit it to exit Chapter 11. Of this $20 million loan, $1.5 million would be paid to Class Counsel as an administrative expense. The Bankruptcy Court approved the

---

[15] As mentioned above, although the 2015 Settlement was based, in part, on Brooks's criminal restitution awards, which were abated by his death, other elements of the 2015 Settlement, including Class Plaintiffs' loan, became effective and occurred in November 2015, coinciding with the Bankruptcy Court's confirmation of Body Armor's plan.

27

2015 Settlement, over Cohen's objections, under Federal Rule of Bankruptcy Procedure 9019, concluding that the settlement was "reasonable, fair and in the best interests of the Debtors, their estates and their stakeholders." J.A. 1. The Court referenced the payment to Class Counsel when explaining its approval of the 2015 Settlement, stating: "I don't believe in this circumstance the Court need go through a substantial contribution analysis. But were I to do that I believe that the evidence in front of the Court certainly would support a finding here of substantial contribution of this estate." J.A. 641–42.

Settlements are preferred in bankruptcy. *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996). Although approval of a settlement is "within the sound discretion of the bankruptcy court," the agreement must be "fair, reasonable, and in the best interest of the estate." *In re Key3Media Grp., Inc.*, 336 B.R. 87, 92 (Bankr. D. Del. 2005). We review a bankruptcy court's approval of a settlement for abuse of discretion. *Will v. Nw. Univ. (In re Nutraquest, Inc.)*, 434 F.3d 639, 644 (3d Cir. 2006).

Cohen argues that because Class Counsel failed to submit records as required under Delaware Local Rules and our Circuit's precedent, it was "impossible" for the Bankruptcy Court to approve the fee award and, accordingly, the 2015 Settlement. Appellants' Br. 37. However, the Bankruptcy Court considered the payment to Class Counsel as part of its approval of the 2015 Settlement negotiated between Body Armor and various claimants. Indeed, the cases Cohen cites in support of his argument that comprehensive records were required involved independent applications for fees, rather than fees negotiated as part of a settlement. *See* Appellants' Br. 36–37 (citing *In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 844 n.11 (3d Cir. 1994), then citing *In re Meade Land & Dev. Co.*, 527 F.2d 280, 283 (3d Cir. 1975), *superseded by statute*

28

*on other grounds*, Bankruptcy Reform Act of 1978, Pub. L. No. 103-394, 107 Stat. 4106, *as recognized in In re Busy Beaver*, 19 F.3d at 849 n.20).

Furthermore, we agree with the District Court that there is "no authority to establish that a fee application was required under the very unique circumstances of this case"—that is, "where [the] debtor's litigation opponent"—Class Plaintiffs— "financed the debtor's chapter 11 exit with a loan made on terms extremely favorable to the debtor and all of its constituencies, with the full support of all of the debtor's constituencies." *In re SS Body Armor I, Inc.*, 2019 WL 2344038, at *9. Class Counsel's fee, as explained above, was paid out of Class Plaintiffs' loan to Body Armor. The Bankruptcy Court emphasized that the agreement was a "good deal" for Body Armor, and that it "avoid[ed] significant" and costly future litigation by settling several outstanding claims. J.A. 639. Thus, the Court did not abuse its discretion in approving the 2015 Settlement or the payment to Class Counsel.

### III.

For the foregoing reasons, we will reverse the Bankruptcy Court's December 3, 2015, order regarding Cohen's fees insofar as it awards Cohen a fee contingent on Body Armor's recovery under SOX § 304 and remand for further proceedings consistent with this Opinion. We will affirm the order insofar as it denies Cohen's claim of substantial contribution. We will also affirm the Bankruptcy Court's December 3, 2015, order approving the award of fees to Derivative Counsel. And, finally, we will affirm the Bankruptcy Court's July 9, 2015, order approving the 2015 Settlement.