NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 24-3196
_____

In re: WILLIAM F. CARNEY,

Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 2:24-cv-00778)
District Judge: Honorable Marilyn J. Horan

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
on October 28, 2025

Before: CHAGARES, *Chief Judge*, BOVE, and SCIRICA, *Circuit Judges.*

(Filed: May 1, 2026)

_____

OPINION[*]

_____

**SCIRICA**, *Circuit Judge*

The Bankruptcy Code imposes an affirmative obligation on debtors to report their

assets and liabilities. Since both creditors and the Bankruptcy Court rely on this "full and

---

[*] This disposition is not an opinion of the full Court and pursuant to 3d Cir. I.O.P.
5.7 does not constitute binding precedent.

honest disclosure," a debtor's compliance is "crucial to the effective functioning of the federal bankruptcy system." *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 362 (3d Cir. 1996). "Given this reliance, we cannot overemphasize the debtor's obligation to provide sufficient data to satisfy the Code standard." *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988). Debtor William F. Carney failed to meet this obligation. He now seeks to benefit from that failure.

While one of Carney's previous bankruptcy proceedings was ongoing, without notifying the Bankruptcy Court or his creditors, Carney reached a settlement in the Pennsylvania Court of Common Pleas involving claims and assets that were part of his bankruptcy estate. Under the Bankruptcy Code, Carney was not permitted to reach that agreement without approval of the Bankruptcy Court. But that prior proceeding was dismissed and closed without the court ever approving—or, indeed, learning of—the settlement. Several months later, Carney filed the instant bankruptcy. Upon learning of Carney's agreement, and following the motion of his Chapter 7 Trustee, the court approved the settlement following the procedure required by Federal Rule of Bankruptcy Procedure 9019(a). The District Court affirmed. Carney now contends that the Bankruptcy Court abused its discretion by adopting his own settlement. We reject that contention and will affirm the District Court's judgment.

I.

Though this appeal arises from Appellant William F. Carney's fifth bankruptcy proceeding, it involves conduct that occurred during two prior interconnected cases—

Carney's fourth federal bankruptcy and the simultaneous Pennsylvania probate of his mother Mary Carney's estate. We must begin with those prior proceedings.

On May 1, 2022, Carney filed his fourth bankruptcy case. While Carney's Chapter 13 bankruptcy was pending, on June 5, 2022, Carney's mother Mary Carney passed away. Mary's last will and testament designated Appellee Janice Lynn Allan—Mary's daughter and Carney's sister—executrix of the estate, and the Pennsylvania Court of Common Pleas duly granted Letters Testamentary to Allan. Under the terms of the probated will, Carney, Allan, and their brother John A. Carney III were devised the remainder of Mary's estate in equal shares.[1] But Carney filed a petition contesting the will, claiming he had discovered a holographic codicil naming him the sole heir to Mary's house.

On January 24, 2023, Allan and Carney seemingly settled this dispute over Mary's house by agreeing, in relevant part, that Carney would pay Allan $80,000 to "buy-out . . . Allan's remaining one-half interest of the property" by February 28, 2023, or else he would "immediately list the property for sale" and split the proceeds with her after costs. App. 10–11. Carney, represented by counsel, also waived the right to contest the agreement or file suit against the estate. Carney filed a consent motion petitioning the Court of Common Pleas to set aside his estate challenge, and the court adopted the settlement by an order dated January 25, 2023.

---

[1] John disclaimed his interest in the estate, and accordingly he is not involved in the present dispute.

Though Allan, and the Commonwealth's courts, believed they had resolved this dispute, unbeknownst to them Carney's federal bankruptcy case remained ongoing. And Carney did not notify the Bankruptcy Court either of his interest in his mother's estate or the agreement he had entered modifying that interest. Unsurprisingly, the Bankruptcy Court took no action on this settlement prior to dismissing Carney's case on February 21, 2023, and closing it two weeks later.

However, after initiating a fifth bankruptcy proceeding, Carney reported a $320,000 interest in Mary's estate in a July 9, 2023, filing—claiming the full value of not just the house, but Mary's whole estate. This was the first time Carney notified a federal Bankruptcy Court of any such interest, but he still did not report the settlement. It ultimately fell to Allan to finally notify the Bankruptcy Court—and Carney's Chapter 7 Trustee—of her agreement with Carney. The Trustee, presuming the prior settlement agreement was void, proceeded with court approval to retain a Special Counsel familiar with Pennsylvania probate litigation to review the agreement. Based on the Special Counsel's assessment, the Trustee raised several issues with pursuing a claim based on the codicil to the court, including that (1) the codicil had not been admitted by the Court of Common Pleas and its admission was uncertain, (2) affidavits presented with the codicil attested only to the handwriting, not to witnessing its execution, and (3) Mary's mental capacity would need to be established, as the codicil was signed while her health was in decline.

In addition, while further litigation risked diminishing the estate, the existing agreement would bring in sufficient funds to cover all remaining administrative and

4

unsecured claims while leaving a surplus to Carney. Concluding that further litigation would benefit only Carney, and only at significant risk and expense, the Trustee recommended that the court approve of the settlement. After a hearing, the Bankruptcy Court agreed with the Trustee and approved the settlement agreement.[2] The District Court agreed. Carney now appeals to us.

## II.[3]

The parties agree that, though Carney's mother Mary passed away a little more than a month after the initiation of his fourth bankruptcy, his interest in her estate became property of the bankruptcy estate under 11 U.S.C. § 541(a)(5)(A) as an "interest in property . . . that the debtor acquires or becomes entitled to acquire within 180 days of [the commencement of his case] . . . by bequest, devise, or inheritance."[4] *See* 11 U.S.C. § 1306(a)(1). Though Carney was required by Federal Rule of Bankruptcy Procedure

---

[2] A docket entry following the hearing notes that the Bankruptcy Court approved of the settlement agreement "[f]or the reasons stated on the record." App. 4–5. We note, however, that neither of the parties provided a transcript of this hearing or a colloquy of the "reasons stated." The District Court similarly noted the absence of that record in its decision affirming the Bankruptcy Court.

[3] The district court had jurisdiction over Carney's challenge to the Bankruptcy Court's order under 28 U.S.C. § 158(a)(1), and we have appellate jurisdiction under 28 U.S.C. §§ 158(d)(1) and 1291.

[4] Accordingly, we do not reach the question of whether Carney's probate claim implicates a "distinction" between Section 541(a)(1), which encompasses "contingent property interests such as causes of action," and Section 541(a)(5)(A), which may not. *In re Kane*, 628 F.3d 631, 641 n.7 (3d Cir. 2010). We do note, however, that regardless of the answer, the settlement agreement would be binding—either because the settlement as originally entered remains in effect or because we now affirm the court's Rule 9019(a) order.

1007(h) to report this interest, he never did. Even though the Bankruptcy Court did not know about Carney's claim, he was not permitted to dispose of claims or assets that he now admits were part of the bankruptcy estate without following the Bankruptcy Code. And Rule 9019(a) authorizes only the Bankruptcy Court, "[o]n the trustee's motion and after notice and a hearing," to approve the settlement of an estate's claim. Because the parties failed to comply with even the most basic requirements of Rule 9019, the settlement agreement had no legal effect. *See, e.g.*, *Am. Prairie Constr. Co. v. Hoich*, 594 F.3d 1015, 1024–25 (8th Cir. 2010) (citing cases). Since the parties do not dispute it, we assume without deciding that the dismissal of the fourth bankruptcy revested the interest from the estate to Carney. *See* 11 U.S.C. § 349.[5]

Accordingly, the parties agree that when Carney commenced the instant bankruptcy, his fifth, the interest in his mother's property was still unsettled. And once again, Rule 9019(a) granted the Bankruptcy Court the authority, even over Carney's objection as the debtor, to "approve a compromise or settlement" of that outstanding claim. Fed. R. Bankr. P. 9019(a). The only question for us now is whether it committed reversible error by doing so on the same terms that Carney had previously agreed to.

---

[5] By its express terms, Section 349(b)(3) revests property in "the entity in which such property was vested immediately before the commencement of the case." But no party contends—and we are presented with no reason to assume—the Code would deviate from its objective of restoring the "financial status quo" solely because assets under Section 1306(a)(1) were swept into the estate during a 180-day window after commencement. *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 466–69 (2017); *see also In re Slaughter*, 141 B.R. 661, 663 (Bankr. N.D. Ill. 1992) ("It would be anomalous to give prepetition property of the estate to the debtor under § 349(b)(3) and postpetition property of the estate to creditors.").

We "stand in the shoes" of the District Court when reviewing the Bankruptcy Court and apply the same standard of review. *In re Klaas*, 858 F.3d 820, 827 (3d Cir. 2017) (internal citation omitted). For the approval of a settlement agreement under Rule 9019(a), that standard is abuse of discretion, a deferential standard that permits reversal only if the decision rests on "a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *In re Nutraquest, Inc.*, 434 F.3d 639, 645 (3d Cir. 2006) (internal citation omitted).

"Settlements are preferred in bankruptcy," *In re S.S. Body Armor I Inc.*, 961 F.3d 216, 233 (3d Cir. 2020), as they both "minimize litigation and expedite the administration of a bankruptcy estate," *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996). The court must "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal," *id.*, to determine if the settlement was "fair and equitable," *Protective Comm. for Indep. S'holders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968).

There is no question that the settlement was fair and equitable for every other bankruptcy stakeholder. Carney does not contest that the settlement is sufficient to resolve all his estate's administrative expenses and pay off all unsecured claims while leaving him a surplus. All other parties stand only to lose from further litigation, and only Carney stands to benefit.

Carney has given us no reason to believe the settlement was not fair and equitable for him. Since the two pages of argument Carney offers us were copied nearly verbatim from his argument before the District Court, we can agree with the trial judge that Carney

7

did not then and has not now "identified any factual errors from that hearing or from the Bankruptcy Court's decision for this Court to consider." App. 47. Notably, Carney does not address or explain the plain tension between his earlier agreement to this settlement and his present challenge. To be sure, since "a case may be settled and often is on the basis of factors other than value of the claim," a previous settlement is not dispositive of the merits of his codicil claim. *Little v. Dresser Indus., Inc.*, 599 F.2d 1274, 1278 (3d Cir. 1979). But it does make it hard for us to credit Carney's assertion that the settlement is unfair.

On that front, Carney's only contention is that there is "absolutely nothing" that supports compromising a codicil that gives him full interest in Mary's home into a settlement that gives him only a half interest. But the record does not support Carney's assertion. The strongest evidence going to the difficulty or ease of succeeding in the estate challenge and the expense, inconvenience, and delay attending that litigation weighs against Carney.[6] The Trustee retained a Special Counsel expert in Pennsylvania estate litigation who pointed out several reasons to doubt Carney's ability to successfully litigate the codicil's validity on the merits, not least that the codicil was not witnessed, Mary's mental capacity would need to be established, and accordingly that having the

---

[6] In *Martin*, we established four factors Bankruptcy Courts in our Circuit should examine when deciding whether to approve or disapprove a settlement; namely "(1) the probability of success in litigation, (2) the likely difficulties in collection, (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *In re RFE Indus., Inc.*, 283 F.3d 159, 165 (3d Cir. 2002) (citing *Martin*, 91 F.3d at 393).

codicil admitted is not guaranteed. Carney's only reply is that those arguments have not yet been advanced—which, given that the original settlement was reached before any of these issues were litigated, does not assuage the concerns.

Because Carney has not demonstrated that the bankruptcy court committed an error of fact or law, we have no ground to conclude the court abused its discretion in concluding that the settlement was fair and equitable.

III.

For the foregoing reasons, we will affirm.